## Jane Briggs v. Russell Briggs.

*Equity practice: Ordering cause to stand over to amend bill.* It is within the discretion of the Court, after a cause has been set down for hearing on bill, answer and replication, to permit the bill to be amended and the cause to be opened for proofs ; and the exercise of such a discretion is proper in a case where since the closing of proofs evidence of material facts has come to the knowledge of the complainant, the existence of which was unknown before ; and the facts were of a character rendering it quite proper not to set them out in the bill, unless then supposed to be susceptible of proof.

*Equity pleading: Verifying amendments in divorce cases.* When a divorce bill is amended, the whole bill, as amended, should be re-sworn to. It is not sufficient that the proposed amendments have been sworn to in the petition for leave to amend ; because our practice requires that the complainant in divorce cases shall deny collusion. But when the facts, which are to be introduced by amendment, are of a nature to negative collusion, and the objection—that the bill as amended is not sworn to—is first made in this Court, it will be disregarded.

*Evidence: Privileged communications: Physicians and Surgeons.* It is not competent for a Physician or Surgeon to testify to facts which have been communicated to him for the purpose of enabling him to perform his professional duty, or were, in any way, brought to his knowledge for that purpose.

*Divorce on the ground of cruelty: Evidence.* While it is true that in a bill for a divorce on the ground of cruelty, the specific acts on which the charge rests must be set out in the bill ; the evidence is not necessarily limited to the particular facts charged. Evidence of other facts which serve to give character to the specified facts proved, is admissible. Thus, acts of personal violence, when intrinsically and separately considered, may not amount to such a degree of cruelty as to justify a divorce ; yet when attended by habitual brutal behaviour, so as to be a constant outrage upon the sense of decency and propriety of the party to be affected by them, a case of extreme cruelty within the meaning of the statute is established.

*Heard January 6. Decided January 10.*

Appeal in Chancery from Washtenaw Circuit.

The complainant filed her bill against her husband for

a divorce on the ground of cruelty. The defendant answered; and issue was joined by the filing of a replication, An order was entered closing proofs; and the cause stood for hearing on bill, answer and replication. At this stage of it, the complainant filed a petition, duly verified, for leave to amend her bill by inserting an additional specification of cruelty, of the facts in support of which, she avers, that she had no certain knowledge, until after the filing of the bill and answer in the cause. The Court granted leave to amend; the defendant answered, and on the issue as joined upon the amended bill and answer, the proofs were taken and the cause brought to a hearing. The Court below dismissed the bill; and the complainant appeals to this Court.

*Norris & Uhl,* for complainant.

I. On the part of the complainant it is contended that the charges in the bill are sufficient; that there is no demurrer to any part of the bill, no objection to any of the testimony because of a want of more specific charges. There are some acts of cruelty proven not specially charged, but their character is so far indicated as to prevent any surprise on the defendant, and they may be proven. *Story's Eq. Pl.* §§ *28, 252; 3 Greenleaf's Ev.* § *356; 6 John. Ch. R. 351; E lw. Ch. R. 14.* And all such acts may in any state of the pleadings be proven, by way of *inducement*—throwing light on the conduct of the parties. *Greenleaf's Ev.* § *357.*

II. Some considerable portion of the complainant's case may rest upon the admissions of the defendant, not alone, but supported by other testimony looking in the same direction, and *under circumstances* clearly showing *no collusion.* As to the force of such testimony the Court will note the following authorities: *Bishop on Marriage and Divorce,* §§ *309. 310; Sawyer v. Sawyer, Walk. Ch. R. 50; 1 Greenleaf's Ev.* §§ *201, 218; 3 Ib.* § *376.*

III. What is the "extreme cruelty" of the statute? It is partly defined there in the expression, "whether practiced by using *personal* violence, or by *any other* means." *Comp. L.*, § *3228*. Its further limitations are fully given in general treatises. *Bishop on Marriage and Divorce*, §§ *454, 462, 463, 469, 471, 477, 479*.

"Our statutes do not confine such cruelty to *mere* physical violence, which is by no means the *worst injury* that can be inflicted on persons of refined sensibility, but the grievance of whatever kind must be of the most aggravated nature to justify a divorce." *Cooper v. Cooper, 17 Mich., 210.* It need not be *blows. Bishop*, §§ *729, 730.* Ill treatment of child. *Ib.* § *735.* One act may be sufficient. *Ib.* §§ *744, 747.* If it threaten bodily harm. *Ib.* § *748.*

*H. J. Beakes*, for defendant.

I, The amendment ought not to have been allowed. 1. The Court had no power to make a new case by amendment. *People v. Washtenaw Judges, 1 Doug., 434; People v. Wayne Circuit Court, 13 Mich., 206.* These were cases at law, but the same rule prevails in chancery. *4 Paige, 538, 541; 1 Edwards, 46, 52; 14 Peters, 156; 1 Barbour's Ch. Prac., 207; 2 Barb. Ch. Prac., 395.* 2. If the amendment would have been otherwise proper the application was made too late. "After publication passed and the bill has been set down for hearing, the bill can be amended in no other respect than by making parties." *1 Daniel Ch. Prac., 474 (marginal page 459.)* "And when parties are added after publication passed, the cause, as to such parties, must be heard on bill and answer only." *1 Daniel Ch., Prac., 494 (marginal 478).* 3. The amendment should have been applied for as soon as the alleged fact was discovered. *1 Paige, 424; 2 Paige, 67.*

II. No divorce should be granted unless the specific acts of cruelty *charged in the bill* have been proved, nor unless

those acts as charged and proved are sufficient, even if the Court should be of opinion that the testimony would have authorized other charges. ( *Cases cited in section 1242 of Cooley's Digest*). The general charge amounts to nothing more than a summary of the specifications alleged.

Bishop says " it is probably everywhere true with us (except in Vermont), that to allege cruelty in general terms and in the mere words of the statute is not sufficient; the facts must with greater or less minuteness be set out." *2. Bishop, Mar. and Div.* § *651,* and cases there cited. See also §§ *649, 650.*

If the general conduct of the parties aside from the specific acts charged in the bill be admissible for any purpose, it is only to enable the Court to understand more fully the specific acts complained of as circumstances in aggravation or extension. *2 Bishop Mar. and Div.* § *657* (*marginal p. 497*), *658 and cases cited.*

Cooley, J.

The bill of complaint in this cause was filed September 29, 1866, for the purpose of procuring a divorce from the bonds of matrimony on the ground of extreme cruelty.

The marriage took place in Skaneateles, N. Y., where complainant then resided, in October, 1843. The defendant, at the time lived at Saline, Michigan, where he had children by a former marriage, and to which place he at once brought his wife. The defendant was then thirty-eight years of age, or thereabouts, and the complainant thirty-three. So far as we are able to judge from the record, the marriage was an uncomfortable one from the outset. The defendant has taken testimony to show that when his wife reached his place at Saline, she at first refused to leave the stage, and gave indications of disappointment and dissatisfaction. A few months after the marriage, for reasons into which we get very faint insight, she left him, and went to a

neighbor's, apparently with the intention of not returning, but was subsequently induced to return on his solicitation, and on his promise to treat her better. Somewhat later, visits made by her to her former home appear to have caused more or less difficulty and dispute between the parties. When she was at home, the record would indicate that the parties lived very much apart from the rest of the world, neither going abroad much, nor having many visitors, and there was little opportunity for either to make proof of the exact state of their relations. So far as we have evidence, it seems to indicate that he was harsh, tyrannical, and overbearing towards his family, penurious in his provision for their comforts, and coarse, profane and obscene in his language. A daughter was born to the parties in 1851, but this does not seem to have improved their relations. Soon after the birth of the daughter, if not before, both parties seem to have been somewhat afflicted with disease, the precise nature of which the evidence does not satisfactorily disclose, but which appears to have left both with shattered constitutions. The defendant puts in evidence to show that when the daughter was about two years of age, his wife, who had previously been sleeping apart from him, refused to share his bed, and advised him with evident ill humour, to go abroad for the satisfaction of his desires. It is impossible fully to understand this transaction, without some knowledge of the secret cause of dissatisfaction then existing between the parties; but as no other evidence appears in the case from which an inference of want of modesty is to be drawn against the complainant, her language on this occasion appears to us to be the petulant exclamation of a wife, who suspected the condition of defendant to be the result of previous unlawful indulgence, rather than an exhibition of mere caprice, or of causeless ill humor. The state of things between the parties did not improve from this time on, and at length the present bill was filed.

The original bill contained general charges of long continued ill treatment, and also specified :

1. That in the summer of 1864, he said he would kill her if he could get to her; that he then took up a stick of wood and then a hammer, and threatened to split her brains out, and that she was obliged to call on one of his sons by a former marriage to defend her.

2. That in the spring of 1866 he shook his fist in her face and called her a damned curse of hell.

3. That on another occasion, the same spring, he threatened to shoot both her and her daughter.

4. That he was in the habit of treating her with abusive language, when she called upon him for necessary wearing apparel.

And after the cause was at issue, and had been set down for hearing on the pleadings without evidence, the court permitted an amendment of the bill by which a fifth act of cruelty was specified; to wit, that in the year 1851, the defendant knowingly and wilfully communicated to complainant a venereal disease.

The right of the court to permit the bill to be amended, and the cause to be open to proofs in the condition in which it then stood is contested; but we think it clearly had the power to do so, and that its discretion was properly exercised in the case. In her petition for the amendment the complainant shows that she had not previously been possessed of the facts which would have warranted her making this serious charge, and from what she discloses as the source of her information, we cannot doubt that, however strongly she may have suspected the fact before, it was now for the first time presented in such form as to enable her, as she thought, to obtain the requisite evidence. She was excusable, therefore, for not embracing the charge in the original bill, and she was guilty of no laches in seeking the amendment afterwards.

It was objected, however, that the amendment was not

sworn to. The petition appears to have been sworn to in due form, and as the amendment was made a part thereof, its facts were all duly verified. It is proper to say, however, that when a divorce bill is amended, the whole bill as amended ought afterwards to be sworn to. Our practice requires the complainant to make oath that the acts charged as causes for divorce, were not committed with the consent, connivance, privity or procurement of the complainant; and in regard to any fact introduced into the will by way of amendment, this requirement is avoided if the bill is not again sworn to after such amendment is made. An oath to the petition for leave to amend, affirming only the truth of the charge proposed to be made thereby, obviously falls short of a compliance with this practice. But, as the peculiar charge here made is one which would of itself negative any collusion, we are not disposed to allow force to the objection, especially as it was not made in the court below. The amendment, therefore, and the evidence to sustain it we regard as properly before us for consideration, on this hearing.

It will be convenient, perhaps, to consider this branch of the case before we proceed to the other charges. Complainant seeks to support the allegation in the amendment:

1. By proving a specific act of adultery between the defendant and a woman living near him, sometime in 1853 or thereabouts.

2. By statements made by him indicating that he had contracted a venereal disease from this woman; and,

3. By the evidence of his attending physician that he had such disease about that time, and a letter from the defendant to the physician which is claimed to admit the fact.

The letter referred to is not proved in any such manner as to make it evidence. The physician testifies to having received it, and gives what he says is an extract; but it is not otherwise produced or put in evidence. Nor do we

think the physician's evidence was admissible. He had no knowledge upon the subject except what he obtained in the course of his professional employment, and the case appears to be directly within the statute which forbids a physician or surgeon to disclose any information, which he may have acquired in attending any patient in his professional character, and which information was necessary to prescribe for such patient as a physician, or to do any act for him as a surgeon. *Comp. Laws* § *4323*. We do not understand the information here referred to, to be confined to communications made by the patient to the physician, but regard it as protecting, with the veil of privilege, whatever in order to enable the physician to prescribe, was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose.

Nor do we think the other evidence on this branch of the case sufficiently establishes the charge. There is perhaps enough in the case to warrant, in the mind of complainant, a strong suspicion that the charge was well founded; but there is not such testimony thereof as could justify a court in adjudging it to be proved. We must therefore put this charge entirely aside, and proceed to the examination of the other evidence to see if any other charge, of sufficient magnitude to warrant a divorce, has been satisfactorily made out.

The complainant, it appears, has not confined her evidence to the specific acts of cruelty charged in the bill, but has given testimony of other instances, none of them regarded by itself very serious in character, but all tending to show that the general conduct of defendant was such as to render her life miserable. For this purpose and to characterize and explain the particular acts charged in the bill, evidence of this description was competent and proper. Where, however, specific acts of cruelty are relied upon for a divorce, they ought to be distinctly set forth in the bill, and they ought also to be satisfactorily established, before

a court is warranted in directing a decree for divorce. But there are many cases where no specific act standing by itself and without consideration of the preceding conduct, could be regarded as of sufficient enormity to warrant the interposition of the court, while yet, when the general behaviour of the party is seen and observed, the same act, which otherwise might be regarded as a temporary ebullition of passion or ill humour, becomes clearly indicative of deep seated malice, and malignant intent to render the life of its object unendurable. And we have been forced in the present case to regard some cases of passionate conduct on the part of defendant, no more gross than those which might occur in families where concord and comfort generally prevailed, as the occasional exhibitions of a feeling of utter disregard for the comfort and happiness of complainant, which prevailed with defendant as a rule, and from which she was suffering in very many ways, which could not be disclosed by proof of specific acts.

The threatening of complainant with a stick of wood and hammer, so as to oblige her to call for assistance we regard as made out by the evidence. It is true the evidence differs from the allegation in the bill in showing, not that any one came to her assistance when the outcry was made, but that he then desisted and retired; but this variance from the allegation is not such as to warrant us in rejecting the proof, when it carries to our minds a conviction of its substantial truthfulness. And it is quite possible, as suggested on the argument, that the pleader in drawing the bill may have misapprehended the precise statement made to him by the complainant, and that he, in attempting to set it forth, put the charge in words somewhat different from what she understood when it was read to her.

When we go beyond this specific act, it is a very significant circumstance that the child of the parties adheres to the mother, and appears to be equally with her an object of dislike to the father, and that his children by the former

BRIGGS *v.* BRIGGS.

wife, so far as they appear in the case previous to the commencement of the suit, seem generally to exhibit sympathy with the complainant, and a want of affection for their father. And although these last named children now come forward to give evidence for the defendant, we have looked in vain through that evidence for anything which fairly tends to support the defence, or to show that the defendant was a kind or affectionate husband or father. Whatever is said by them, with a view of conveying this impression, is more than counterbalanced by other evidence which they also give.

That a woman with ordinary womanly instincts and modesty should be compelled to live with one who would constantly outrage her sense of propriety and decency by vile and disgusting expressions, not merely when they were alone, but also in the presence of others, is certainly a great hardship, which is aggravated and made many times more severe by the fact that a young daughter is compelled to hear the same profane and indecent language. The disregard of the decencies of life under such circumstances, unless it appears that the woman herself is a participant in the same indecencies, or at least is not annoyed by them, is a disregard of her comfort also, and partakes of cruelty, even though it be not of that extreme character which would authorize a divorce. If a man persistently annoys his wife and family by indecency, he ought at least to be exceedingly careful that he does not also at any time resort to actual violence; for, if he does, he cannot claim from the Court that charitable construction of his conduct, which a man of general correct deportment may properly demand.

There can be no doubt, we think, that the difficulties between the parties have reached a point that renders undesirable that they should any longer attempt to live together, and that the further continuance of the bond of matrimony between them would not be of benefit to either. And we are forced to conclude from this record, that the

cause of this unhappy state of affairs is the unkind conduct of defendant, long continued, and wholly unexcused. And it cannot be claimed that this conduct is due to ignorance merely, or that it is the result of defective mental training. There are evidences in the record that the defendant is possessed of shrewdness, and that his education is not deficient. He is shown besides to be a man in easy circumstances, and he evidently was entitled to a leading position in the social circle of his neighborhood. When, therefore, we are considering the conduct of this man towards his wife and daughter, we are not to judge him by the same standard which might be applied in the case of persons differently taught and differently circumstanced, and with whom conduct equally rough and coarse might not appear so entirely incongruous. And in this connection it may not be out of place to mention his attempt, when a suspicion seems to have been excited, that the diseases under which they both labored were of a degrading character, to fix a charge of the origin of them upon her, notwithstanding there is not in the whole case a single breath of suspicion cast by any of the evidence upon her character for chastity. The attempt, unless well based, was a very heartless one, and if there was basis for it, no offer was made to show it.

A somewhat remarkable letter from the defendant to the complainant appears to have been written immediately after the commencement of this suit, which she has done well to produce in court, and which requires a brief consideration at our hands. The letter commences with a term of endearment, but immediately adds, "I have become thoroughly satisfied we must have a divorce; if you fail to obtain it, then I must do it." It then proceeds to make her an offer of three thousand dollars, with the evident understanding that a divorce was to be assented to, and accompanies this with the statement that if he were compelled to give more, he should feel it his "duty" to deduct it from

his daughter's share of his property. He invites acceptance of his offer, and closes by saying that he has not the slightest feeling against her, but is only "grieved to the heart."

Precisely what the purpose of this letter was, it is difficult to say. In view of his conduct and the answer of the defendant which he soon after filed, and which made specific charges of cruelty against his wife, we can give but limited credit to his expressions of kindness. If the letter was written in good faith with a view to an understanding for a divorce, it was reprehensible, as an attempted fraud upon the law. If it was not for that purpose, it must have been designed to obtain evidence with a view to defeat the present suit by showing collusion. And whether for the one purpose or the other, the attempt to coerce his wife's action by the indirect threat to limit his bounty to their child, unless she accepted his offer, was in singular contradiction to the evidence of kindly feeling which his letter was probably designed to exhibit. We deem it proper to remark upon this document, as one upon which we can put no construction favorable to the defendant's sense of justice and propriety.

Our conclusion upon the whole case is, that such a case has been made out as to warrant a divorce. The statute provides that the divorce may be decreed "for the cause of extreme cruelty, whether practiced by personal violence or by any other means." We are not required, therefore, to look solely at the violence employed by defendant, but in disposing of the case may properly have regard to the general result of his conduct. That conduct is properly to be characterized by the result which it has produced upon the marriage relation and upon the comfort of the complainant therein. A single act of causeless violence may be overlooked if its consequences are evanescent, and leave the relations of the parties substantially undisturbed; but a long continued course of conduct, which, without the fault of

the wife, results in making the marriage relation unendurable, and in driving her from her husband's house, is clearly. we think, a case of extreme cruelty within the meaning of the statute. In its effect upon the marriage relation, cruel conduct, which has effectually destroyed it, cannot be regarded as other than extreme.

The decree of the court below must be reversed, and a decree entered dissolving the bonds of matrimony in accordance with the prayer of the bill, and adjudging the custody of the daughter of the parties to the complainant. The cause will be remanded that there may be a reference to a Circuit Court Commissioner to take proof concerning the property of the defendant, and as to what would be a suitable allowance to the complainant by way of alimony, and that on the filing of his report, the proper order may be made by the Circuit Court in chancery in that regard. And the complainant is to recover costs of this Court and of the Court below to be taxed.

The other Justices concurred.