HENSINGER *v.* HENSINGER.

1. HUSBAND AND WIFE—SEPARATE MAINTENANCE—NONSUPPORT—EVIDENCE.

In suit for separate maintenance, evidence *held,* sufficient upon which to grant relief to wife on ground of nonsupport in view of showing made as to husband's income as an assistant sales manager and small amounts contributed by him toward support of plaintiff and their young son.

2. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY—EVIDENCE.

The writing of a letter by defendant husband and addressing it to a younger woman and which disclosed unduly intimate relations toward the intended recipient *held,* an act of extreme cruelty toward plaintiff wife in suit for separate maintenance whether letter was indicative of actual relations or written to a fictitious person, for the purpose of deliberately deceiving the wife.

3. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY—EVIDENCE.

Where bill of complaint in suit for separate maintenance alleged that defendant was infatuated with another woman younger than himself and that defendant had asked plaintiff to get a divorce so he could marry such woman, a letter written by him to such woman and showing an unduly intimate relation with her was admissible in view of the allegations and evidence showing he was not taken by surprise.

4. SAME—SEPARATE MAINTENANCE—DECREE—STATUTES.

Under record showing that plaintiff wife would have been entitled to a decree of divorce on the grounds of nonsupport and extreme cruelty, where statute provides that if such be the case the wife might have a decree of separate maintenance, a plaintiff seeking such relief is entitled to a decree therefor under such statute (3 Comp. Laws 1929, § 12794).

5. SAME—SEPARATE MAINTENANCE—CUSTODY OF CHILDREN—ALIMONY—JURISDICTION OF TRIAL COURT.

On appeal from decree dismissing bill for separate maintenance where plaintiff is awarded such relief and custody of minor child, she is also awarded $80 monthly alimony, possession and

use of household furniture, towards purchase of which plaintiff had made substantial contributions from her own funds, with jurisdiction vested in trial court as to custody of child and alimony (3 Comp. Laws 1929, § 12974).

DETHMERS and CARR, JJ., dissenting.

Appeal from Jackson; Simpson (John), J. Submitted October 9, 1947. (Docket No. 36, Calendar No. 43,838.) Decided January 5, 1948.

Bill by Mary Hensinger against Kenneth Hensinger for separate maintenance. Decree for defendant. Plaintiff appeals. Reversed.

*James J. Noon* and *John J. Gallagher,* for plaintiff.

*Blackman & Blackman,* for defendant.

DETHMERS, J. (*dissenting*). The trial court dismissed plaintiff's bill of complaint for separate maintenance, finding that she had failed to prove her charges of habitual drunkenness, nonsupport and extreme cruelty.

On appeal plaintiff raises no question as to the charge of habitual drunkenness.

Bearing on the charge of nonsupport, the proofs show that before the parties separated plaintiff incurred hospital and doctor bills, the major portion of which defendant had not paid; that defendant was in default in payments on a land contract for the purchase of the home of parties; and that defendant caused the telephone to be removed from the home despite plaintiff's insistence that she needed it. During the approximately six weeks intervening between the separation and filing of plaintiff's bill of complaint, defendant gave plaintiff $25, bought her a ton of coal and paid her grocery bills but failed to make payments on the land contract, resulting in its forfeiture and purchase of the home by the plaintiff on

a new contract for the amount unpaid on the old. That this constituted failure to provide for plaintiff and the minor child of parties in a manner befitting their station in life and in keeping with defendant's means was not shown. Such proofs fall short of establishing nonsupport as ground for a decree for separate maintenance.

In support of her charge of extreme cruelty plaintiff testified that she and defendant talked about a divorce once or twice; that after they separated defendant said that he wanted a divorce and that he did not care for plaintiff any more; that defendant admitted he thought he was in love with another woman, but that plaintiff thought it was a passing emotion from which defendant would recover after a while; that plaintiff found a woman's hair comb in defendant's car and talked to him about it but did not think very much of it herself; that plaintiff found in defendant's coat pocket an unmailed letter, of a rather intimate nature, in defendant's handwriting, addressed to a woman. There is no testimony to establish the actual existence of such woman, that defendant had anything to do with her, nor that defendant's statements or the letter had such untoward effect on plaintiff or on the marriage relationship as to constitute extreme cruelty. Plaintiff concedes that a decree for her could not be predicated on the letter alone. In determining whether the language or conduct of a husband toward his wife constitutes extreme cruelty, the degree of refinement or sensitiveness of nature of the wife is to be considered and hence, the effect on the wife and upon the marriage relationship of such language or conduct. *Briggs* v. *Briggs,* 20 Mich. 34; *Bennett* v. *Bennett,* 24 Mich. 482; *Utley* v. *Utley,* 155 Mich. 258; *Hall* v. *Hall,* 172 Mich. 210. In this respect the record is of little assistance to plaintiff. We are con-

vinced that she has failed to establish extreme cruelty sufficient to warrant a decree for separate maintenance.

The order dismissing plaintiff's bill of complaint should be affirmed, without costs to either party.

Carr, J., concurred with Dethmers, J.

North, J. I am not able to concur in affirmance of the decree entered in the trial court, as Mr. Justice Dethmers has written. A full presentation of the factual aspects of plaintiff's case requires something of an amplification (and possibly some repetition) of the facts noted by my Brother.

The testimony in support of plaintiff's charges of nonsupport and extreme cruelty is uncontradicted. As to nonsupport the proof shows abundant ability on the part of defendant to support plaintiff. He was employed as an assistant sales manager and told plaintiff "he was making two-fifty a month, or something." He seems also to have had some other evening employment at which "he was making five dollars an evening." Plaintiff was in ill health, and under a doctor's care for a year just prior to starting this suit. She was in the hospital for some months. With the exception of $100 which came from some insurance, defendant refused or at least neglected to pay plaintiff's hospital bills or her doctor bills. Plaintiff's mother and sister provided the means to meet these obligations for plaintiff. The home occupied by these parties was being purchased on contract which required monthly payments. Defendant discontinued making the payments and allowed foreclosure of the contract, which would have left plaintiff and the young son of these parties without a roof over their heads if plaintiff had not succeeded in obtaining a contract to purchase the prop-

erty in her own name. Subsequent to the separation (July 22, 1945) over a period of approximately six weeks defendant gave plaintiff out of his liberal earnings about $25 with which to meet the incidental needs of his wife and young son; though during this period defendant paid the grocery bill and furnished one ton of coal. Plaintiff's mother came to the. rescue at this time by giving plaintiff money with which to meet incidental expenses. Later, under court order, defendant paid plaintiff $80 monthly. It seems apparent that prior to court action, defendant sought to unload his responsibility as to support and maintenance on plaintiff who is a nurse and at part time employment in a hospital earns $22 a week. Impaired health and the care of her son prevents plaintiff from working full time.

The foregoing would seem quite sufficient on the issue of nonsupport; but its full import as a studied effort by defendant to compel plaintiff to grant defendant's desire that she obtain a divorce, ought also to be considered in connection with the charges and proof of extreme cruelty, which we briefly review.

Following their marriage in 1937 these parties lived together until 1945. They had a son then 7 years of age. Notwithstanding defendant's counsel was present at the trial and cross-examined plaintiff, there is not a word of testimony indicating any failure on plaintiff's part to faithfully discharge her duties as a wife and mother. On the contrary, as to defendant the record discloses the following bearing on the issue of extreme cruelty.

The undisputed testimony is that for some months prior to the separation defendant spent too much time in beer taverns, that frequently (five nights out of seven according to plaintiff's undisputed testimony) he came home more or less under the influence of liquor, that he would be out late—until 2 or

3 o'clock and at least on one occasion until 5 o'clock in the morning. The first night after plaintiff returned home from her stay in the hospital defendant was out until 3 o'clock in the morning and came home in at least a partially intoxicated condition. He repeatedly told plaintiff he did not care for her any more, that he "would just like freedom," that he thought he was in love with a young lady, and that he wished plaintiff would get a divorce. But plaintiff did not want a divorce. She testified: "Every time I talked to him he asked me for a divorce." Finally defendant left the home at a time when plaintiff was "very, very sick." Just shortly before defendant left home plaintiff found a very love-like letter written by defendant inclosed in a stamped envelope addressed to a Miss Dorothy Stimble. It seems to me my Brother's reference to this letter as one "of a rather intimate nature" hardly does it justice. In this letter defendant wrote:

"Honey sure do miss you & words can't express it — * * * Honey I get so lonesome for you I am about going nuts—Rec. your very nice letter & read it about 10 times before I burned it up. * * * Gosh Hon I can't hardly wait till we can be together again if it is only for a hour—pray Hon that we can live 'Happily ever after.' "

I am not impressed with the statement of my Brother that: "There is no testimony to establish the actual existence of such woman, that defendant had anything to do with her," et cetera. Plaintiff testified defendant told her "that he thought he was in love with her (to whom the letter was addressed). * * * He just said he didn't think he cared anything about me any more. He thought he was in love with this girl." It seems too clear for argument that one of two things is true. Either there was such

a person and defendant's relations with her were such as disclosed by the letter itself, or on the other hand defendant wrote it with the deliberate intent of deceiving his wife into the belief that he had unduly intimate relations with this other younger woman in accord with the statement to his wife that he thought he was in love with "this girl," and thereby causing plaintiff pain of mind and leading her to ultimately seek a decree of divorce which defendant had sought to have plaintiff obtain. In either event the writing of this letter, genuine or phony, was an act of extreme cruelty on the part of defendant.

The letter just above mentioned was clearly admissible in evidence notwithstanding the objection of defendant's counsel "that there is no reference made to this in the bill of complaint." The bill of complaint does allege "that the defendant herein has become infatuated with another woman who is considerably younger than he is," and that defendant requested plaintiff to obtain a divorce "so that he can marry this particular woman." Surely defendant was not taken by surprise concerning the letter and envelope in which it was contained because the record shows plaintiff had confronted defendant with this letter, had a talk with him about it, and he sought to have her return it to him so he could destroy it. It was very material and competent proof of the issues presented by the pleadings.

It hardly seems necessary to burden this opinion by further comment on the conduct of defendant towards plaintiff as disclosed by the testimony. We merely note that shortly after the separation while plaintiff was still ill defendant discontinued the residential telephone service notwithstanding, as plaintiff testified, she had need of it during her illness in ordering groceries and other household necessities and having them delivered to the residence which was

outside the Jackson city limits. Another incident indicative of defendant's attitude towards his family, which occurred while the suit was pending but approximately a year before the hearing, was that defendant refused or at least neglected to make any payment on the charge for professional service incident to a tonsillectomy performed on his son.

I am unable to conclude that on the record before us plaintiff would not have been entitled to a decree of divorce had that been the relief sought by her. It may fairly be inferred that defendant would have been quite pleased with such a result. However, the statute (3 Comp. Laws 1929, § 12794 [Stat. Ann. § 25.211]), under which plaintiff's suit was brought, provides that if plaintiff's proofs entitle her to a decree of divorce she is entitled to a decree of separate maintenance. It follows that the trial court was in error in dismissing plaintiff's bill of complaint.

By the decree of separate maintenance custody of the nine-year-old son should be given to plaintiff, with the right of visitation at reasonable times and places given to defendant. A provision like the temporary order for alimony for the support of plaintiff and the minor child at the rate of $80 per month should be embodied in the final decree. As a further contribution toward the support and maintenance of plaintiff and the minor child, the decree should provide that plaintiff is to have the possession and use of the household furniture and furnishings. The record discloses that at the time the household furniture was purchased plaintiff contributed towards the purchase price from her own funds $500 and further that the present value of the household furniture is approximately $700.

A decree of separate maintenance may be taken in this Court wherein will be embodied the foregoing

provisions, provided however that the trial court shall continue to have jurisdiction to hear and determine any subsequent controversy which may arise in this case touching the custody of the minor child or the right to visit him, and also touching the amount of alimony to be paid for the support of plaintiff and the minor child. Appellant will have costs of this Court.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, and BUTZEL, concurred with NORTH, J.