Citizens' National Bank v. Jefferson.

Case 101—PETITION EQUITY—June 6.

## Citizens' National Bank v. Jefferson.

APPEAL FROM LOUISVILLE CHANCERY COURT.

Powers of trustees as to investments.—It is the duty of trustees who are charged with the management of the trust funds for the support and maintenance of the beneficiaries to make, in good faith, such an investment of the funds as would be made by prudent business men, with a view of securing a safe income for themselves or families; and they may change the investment from time to time as they may deem the interests of the beneficiaries require.

The case of Luxon v. Wilgus, 7 Bush, 205, modified.

W. O. HARRIS for appellant.

As this is a friendly suit to test the right of executors to sell and change investments of property held by them in trust under a will, counsel merely points out to the court the authorities bearing upon the question. (Hill on Trustees, side p. 471; Perry on Trusts, sections 764, &c.; Allen v. Graves, 3 Bush, 491; Luxon v. Wilgus, 7 Bush, 206; Prather v. Weiseger, 10 Bush, 120; Bank of Louisville v. Gray, 84 Ky., 567.)

A. E. RICHARDS for appellee.

1. The trustees having various duties of management, control, &c., imposed on them, are necessarily vested with the power of converting the stocks. (Hill on Trustees, side pages 380 and 381; Perry on Trusts, section 451.)

Even *specific* investments may be changed by the trustee under some circumstances, such as to prevent loss, &c. (Perry on Trusts, section 466.)

2. But had the conversion of the twenty shares investment been without authority, it would have been entitled to ratification by the court because it was necessary to prevent loss, and, obviously, for the benefit of the *cestui que trusts*. (Gray v. Lynch, 8 Gill, 405; Washington v. Emery, 4 Jones, N. C., 32; Comnise v. Bourgrem, 2 Ga., Dec. 15; Perry on Trusts, section 476.)

3. The law requires the trustee to invest trust funds, and the power to invest includes the power to change the investment. (Luxon v.

Wilgus, 7 Bush, 207; Baltimore U. F. Dept. v. Creamer, 17 Md.,. 248; Clark v. Henderson, 11 Bush; S. C. 13 Bush.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This action in equity was instituted by the executors; and trustees created by the last will of Thomas L.. Jefferson,. deceased, against the Citizens' National Bank,. and involves the rights and powers of the executors and trustees under that instrument.

It is evident that the executors are now holding the property as trustees for the devisees, and not as the representatives of the testator.

By the first clause of the will of the testator he appoints the appellees, Thomas L. Jefferson, Jr., and Henry Jefferson, his executors, and then proceeds to devise to them all of his property real and personal ot every description, for the uses and trusts declared in his will.

The testator, owning a large and valuable estate, made various specific devises, and directed the manner in which those bequests were to be satisfied, and vested the power in his executors to sell and convey, for the purposes of reinvestment, the real estate devised to his daughters for life, but gave no direction as to the control and management of the personalty devised to them and placed under the control of the executors named as trustees for his daughters. He left surviving him two daughters, Mrs. Balmforth and Lillie Jefferson, and directed by the twenty-first clause of the will that after all the sums specifically devised shall have been paid as directed, " his " executors should cause the remainder of his personal " estate to be equally divided between his five children,.

Citizens' National Bank v. Jefferson.

" or such of them as may be living at the time of the
" division, or if any have died leaving lawful issue, such
" issue to take the share the parent would take if living;
" the shares allotted to my daughters to be held by my
" executors in trust for them severally, *as a separate estate*
" *for life*, the income therefrom to be paid to her on her
" personal receipt, and the principal and income to be
" free from the control of any husband either of my
" daughters may have at the time of the division, or
" may thereafter have; and at the death of either of my
" daughters in this clause mentioned her share to pass
" to her lawful issue or descendants, if any then liv-
" ing, and if none, then to the survivors of the five
" children in this clause mentioned, and the issue or
" descendants of any who have died leaving issue *per*
" *stirpes;* the shares of my sons under this clause my
" executors will pay, transfer and deliver to them as they
" severally arrive at age," etc.

These appellees having undertaken the execution of
the trust, and a large amount of personalty having come
into their possession under the twenty-first clause of the
will for the two daughters of the testator, the income of
which they are entitled to for life, have from time to
time found it necessary to invest and reinvest this per-
sonalty in order to furnish a profitable income to them
(the daughters), and at times to prevent the investment
from being lost.

The trustees have the express power conferred on them
by the will to sell and reinvest the proceeds of the real
estate by the written direction or consent of the two
daughters, but as to the exercise of such a power, when

the personalty has been once invested, the will is silent, except that the trustees are plainly charged, by its provisions, with the duty of managing this trust so as to make it yield an income for the beneficiaries. The trustees under the will invested a part of these trust funds in the stock of the appellant, purchasing twenty-five shares at the price of $3,500, and had the stock issued to them as "trustees for Lillie E. Holloway," the single daughter, she having since the death of the testator married Holloway. The trustees having invested too much of the fund of Mrs. Holloway for her benefit in this stock by five shares, directed the bank to transfer to Mrs. Balmforth, or to them as her trustees, the five shares, or issue her new certificates therefor, offering to surrender the certificates to them as trustees for Mrs. Holloway; the trustees also offered to surrender twenty shares of the stock to the bank, and have issued new certificates to the purchaser to whom the trustees had sold, and the bank, doubting the power of the trustees to so act with reference to the trust fund, declined to receive the stock or to issue new certificates, and hence this action to compel the bank to make the transfers. The trustees also ask the Chancellor, as they have been investing and reinvesting this trust fund to the extent of many thousand dollars, to advise or direct them as to the power to make such investments, and particularly the power to reinvest when they may deem it prudent to do so.

The trustees having collected the personal assets of the testator, and ascertained the amount the two daughters were entitled to, it became their duty, within a reasonble time, to make such investments of this personalty as

Citizens' National Bank v. Jefferson.

would yield to the beneficiaries an income for their support and maintenance.   There is no direction in the will as to the character of the investment to be made, for if there were, it would be the duty of the trustees to follow the directions given by the testator; but the trustees are left to invest in a judicious manner the trust fund, so as to make it safe for the life as well as the remainder interests.   This income, with the principal from which it flows, is to be managed for the lifetime of the daughters, and in its investment a sound discretion, that evidences good faith on the part of the trustees, is required.   It has been held that mere personal security is not regarded as secure, and that investments in stocks, such as railroad stocks, mining shares, etc., that depend upon the result of a mere adventure, are equally unsafe.   The duty, however, has been imposed on these trustees of making the investment, and to neglect such a duty would make them personally responsible.   (Commissioners v. Walker, 6 How.   (Miss.), 143; 38 Amer. Dec., 437.)   It was said in the case cited that the power of the trustee is commensurate with the purposes of the trust, and must be exercised as a prudent man would with reference to his own affairs.   Here the trustees are to manage a fund for the support and maintenance of the daughters, and required at their death to pay over the principal of that fund to those in remainder. They may not invest the money in trade, or in speculation, or in uncertain securities, or in such a way as one of ordinary prudence in the control of his own affairs ought to know that in doing so he was placing the fund in jeopardy.   The prime object should be to make a safe

investment, that will yield a reasonable income for the beneficiaries for life, and when this is done the trustee has discharged his duty. (Kimball v. Reding, 31 N. H., 352.) An investment has been made in this case, and it appears that more stock was issued to one of the beneficiaries than was contemplated, and in regard to that much of the stock the transfer should be made. As to the balance of the stock sold by the trustees, the bank should issue certificates to the purchaser, because it appears from the averments of the petition that the sale would be advantageous to the beneficiaries, or at least prevent loss to them. The question, however, further arises: Have the trustees the power to change the investment at their will and pleasure, and when in their opinion it would redound to the interest of those they represent? The trustees, in regard to the exercise of this power, desire instruction. It is well settled, that if the trustees see that the investment is in peril it is their duty to protect the beneficiaries, and their failure to do so will make them liable. This duty being imposed, and with reference to so large a fund, and for such an uncertain period, and looking to the object the testator had in view, it seems to us the trustees were necessarily invested with the discretion to change the investment from time to time, as they might deem the interests of the beneficiaries required.

In Luxon v. Wilgus, 7 Bush, 205, the devise was to the nephew of the testator in trust " to manage, "invest and pay over to his brother Jarret, and to his " children from time to time, as he for the best interest " of him or them from time to time shall deem most ben-

·" eficial." It was held that the trustee had the right, in his ·discretion under this devise, "to invest in any kind of ·" property, according to the sound discretion of the trus- ·" tee," and that he might change the property from time to time as he deemed advantageous. In the case before us, while the power to invest is not expressed, the law makes it the duty of the trustees to invest the fund for the testator's two daughters in accordance with their best judgment, and in such a manner as a prudent man would in his own business affairs. The law in this case requires the trustees to do what the testator in the case of Luxon v. Wilgus, in express terms, required the trustee to do. The case cited has gone too far in determining that the trustee had the right to invest in any kind of property, as we have already seen that to invest in stocks that are constantly fluctuating, and that by reason of their uncertain value might afford an income to the beneficiary one month and render her destitute the next, although the investment was made in good faith, and in the exercise of what the trustee supposed was a sound discretion, would be an abuse of the trust. Such stocks as have a fixed value, or that ordinarily furnish a regular income, although the income may be slightly less in one month or year than the next, the trustee may invest in. The test of value is the income the stock affords, and that is free from such hazard as necessarily pertains to stocks whose value must depend upon mere contingencies.

We find the doctrine laid down in many of the text-books, that where the fund is once invested in what is regarded as safe securities, that no change can be made without the advice and direction of the

Vol. 88—42

Chancellor, and at the same time the trustee is held bound if he has reason to believe that the fund invested is in danger, and fails to secure it by the exercise of proper diligence. This liability, it seems to us, should necessarily carry with it the power to change the investment by the trustee, when in his opinion the safety of the fund requires it, or when, in the exercise of a reasonable judgment, a reinvestment would advance the interest of the beneficiaries. He may believe the fund is unsafe, and still not be able to satisfy the Chancellor of that fact. Such investments are constantly being changed by reason of the subject matter invested in. State or county bonds, that are regarded as safe and secure investments in many cases, will mature, and when collected must be reinvested; corporations, such as banks, may wind up their business, when the stock taken must be reinvested; and in the course of the management of a trust estate like this, for so long a period, the many changes in the subjects of the investments will necessitate the exercise of a sound judgment on the part of the trustee in making safe investments. This is not a mere naked trust, nor one where the testator or the Chancellor has directed the fund to be invested in a particular way, but a devise of the whole estate to trustees, with directions to control it for the two daughters during their lives; and in discharging this trust the trustees must manage the fund as an ordinarily prudent man would if it belonged to him. They must, in good faith, invest the fund in that which prudent men would regard as secure. With such a fund on hand it may not always happen that opportunities are presented for making what is regarded as a permanent.

investment; and if the trustees should conceive, whether such facts existed or not, that they would loan the money on personal security, if the borrower owned property sufficient to pay the debt, was not involved, and his security in like condition, the investment should be regarded as proper. The true test is: Have the trustees acted in good faith, and would the investment have been made by prudent business men, with a view of securing a safe income for themselves or families?

Judgment affirmed.