CARY v. CARY.

1. Divorce—Nonsupport—Evidence.

Under a bill for divorce alleging that defendant, though of sufficient ability, has grossly, wantonly, and cruelly neglected and refused to provide a suitable maintenance for complainant, evidence of the use by defendant of insulting and abusive language towards complainant is admissible.

2. Same.

Evidence reviewed, and *held* to be sufficient to entitle the complainant to a divorce on the ground of nonsupport. Grant, J., dissenting.

Appeal from Eaton; Smith, J.   Submitted June 14, 1895.   Decided October 8, 1895.

Bill by Sarah C. Cary against John N. Cary for a divorce.   From a decree for complainant, defendant appeals.   Affirmed.

*A. G. Fleury (Huggett & Smith,* of counsel), for complainant.

*L. B. Gardner (Q. A. Smith,* of counsel), for defendant.

LONG, J. I am unable to agree with my Brother GRANT in reversing the decree of the lower court. The grounds for the relief asked, as set forth in the bill of complaint, are that the defendant, "though of sufficient ability, has grossly, wantonly, and cruelly neglected and refused to provide a suitable maintenance for her." My Brother GRANT concludes that there is no sufficient proof to sustain these allegations. After a careful reading of the record, I am compelled to disagree with that conclusion.

The parties were married on August 11, 1892, at Frankfort, Benzie county, this State. Complainant was at that time 62 years of age, and the defendant 73. They had known each other for many years, had both been previously married, and were related to each other by such previous marriage. In 1892 complainant was residing with and keeping house for her son at Frankfort, where the defendant visited her, his home being in Lansing, Mich. He remained with complainant some five weeks, and, while there, the marriage was arranged. After the marriage the defendant remained with complainant at her home until the latter part of February, 1893, when he went to Lansing. Complainant was at that time ill, but upon her recovery she came to Lansing, where they for a time resided, and afterwards went to Charlotte, where they continued to live together up to January 19, 1894. At the time of the marriage, complainant had a small, one-story cottage, and about an acre of land, worth $700, covered by a mortgage of $250. Defendant was worth from $8,000 to $10,000.

It is apparent from the testimony that complainant, after the marriage, was kind to the defendant, attending him in illness, and providing for his comfort. During that time, however, it is evident that the defendant was utterly regardless of the comfort of the complainant. The only clothing he purchased for her was a pair of two-dollar shoes and a pair of rubbers. He compelled her at times to live in an attic, with no conveniences

whatever. At other times they boarded, he refusing or neglecting to pay the board bills, and suits were commenced against him for such board and lodging. The complainant was left in Charlotte for six weeks while defendant went to the World's Fair, and without any means to pay her board. During part of this time she came to Lansing, and worked for her board. He left her without any means whatever. In addition to this neglect to provide a maintenance, which we think is abundantly shown to have been wanton and cruel treatment for a man of his means and circumstances in life, he used the most insulting and abusive language towards her. On the day of his going away, he called her a "she-devil," and said he would not live with her, and that she might go and live with any one who would keep her for her company. He told her she was a thorn in his side, and wanted to rob him. This testimony as to cruel treatment was objected to under the pleadings, but we think it competent under the rule in *Brown* v. *Brown*, 22 Mich. 244.

The complainant has, we think, sustained the allegations of her bill, and the decree of the court below will be affirmed. Complainant will recover the costs of this court, including a solicitor's fee of $100. By the decree of the court below, the case was referred to a circuit court commissioner, to take proofs, and report the same to the court below, as to the amount of property possessed by the defendant, the permanent alimony to be then fixed by that court. The case will be remanded for that purpose.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred with LONG, J.

GRANT, J. (*dissenting*). Complainant filed a bill for divorce March 19, 1894, in which her sole basis for relief is the allegation that defendant, "though of sufficient ability, has grossly, wantonly, and cruelly neglected and refused to provide a suitable maintenance for her." On the 8th day of November, 1894, after all the proofs were

taken, and on the day that the final decree was entered, an amendment was filed, charging extreme cruelty. No petition or order of court allowing the amendment is found in the record. The amendment was not sworn to, nor was the original bill as amended resworn to. Under this state of facts, neither the amendment nor the charge of cruelty contained in it can be considered. *Briggs* v. *Briggs*, 20 Mich. 34; *Green* v. *Green*, 26 Mich. 437.

The decree is based upon the "several acts of cruelty and nonsupport" charged in the bill. The proofs fail to show a case of wanton, gross, and cruel neglect or refusal to support complainant. The defendant was 76 years old, physically weak, and part of the time (about three months before the bill was filed) so ill that complainant testified that she did not consider him competent to attend to his affairs; his property mortgaged for $2,000, besides other indebtedness of about $1,000; his income very limited and uncertain; and a helpless daughter, 45 years old, dependent upon him for support. I do not deem it important to enter into a detailed statement of the proofs.

Decree should be reversed, and bill dismissed, with the costs of both courts.