CASE 44—SUIT BY POLLY FOWLER AGAINST LOUIS FOW-
LER FOR DIVORCE AND FOR AN ORDER DECLAR-
ING HER A FEME SOLE.—May 6, 1910.

## Fowler v. Fowler (2 Cases).

Appeal from Estill Circuit Court.

D. B. REDWINE, Circuit Judge.

From a decree dismissing her bill in each suit, she
appeals.—Affirmed.

1.  Divorce—Cruel and Inhuman Treatment—Evidence.—Evi-
    dence held insufficient to show treatment of a character cal-
    culated to permanently destroy the peace and happiness of
    the wife, and show a settled aversion on the part of the
    husband for her, continued not less than six months, so as to
    warrant a divorce.

2.  Divorce—Grounds—Nonsupport.—Where a husband was a
    man of average industry and economy, earning what he could
    and devoting all his earnings to the support and maintenance
    of his family, including his wife, the fact that she frequently
    spent liberally of her own money to purchase supplies for
    the house and clothing for her stepchildren did not entitle
    her to a divorce for nonsupport.

3   Husband and Wife—Property Rights.—Where a husband
    and wife were married prior to the Weissinger act, Ky. St.
    section 2127, enlarging the rights of married women, the hus-
    band acquired absolute title to her personal property which
    she owned prior to the adoption of such act, and which he re-
    duced to possession prior to that date; and to the right to
    receive the rents and profits of her real estate so previous-
    ly acquired, as provided by Gen. St. 1888, c. 52, art. 2, sec-
    tion 1.

4.  Divorce—Support of Wife—Place—Husband's Duty.—A hus-
    band is under no legal obligation to support his wife at any
    place other than their home.

5.  Divorce—Costs.—Under Ky. St. section 900, providing that,

Fowler v. Fowler (2 cases).

in actions for alimony and divorce, the husband shall pay the costs of each party unless it is made to appear that the wife is in fault and has ample estate to pay the same, in an action by a wife for divorce, in which she was unsuccessful, it was within the discretion of the court to require her to pay the costs.

6   Husband and Wife—Rights of Married Women—Statutes.— The Weissinger act of 1894, Ky. St. section 2127, giving to married women all the rights and privileges as to personal property which the court could grant under Gen. St. 1888, c. 52, art. 2, section 6, relieved them of the necessity of applying to a court of equity to be decreed a feme sole as regards their personal property, and, in effect, to that extent repealed the prior statutes.

7.  Husband and Wife—Married Women—Feme Sole Proceedings.—Where a married women sues to be declared a feme sole, as to her property and the husband is made a party defendant, the chancellor is only authorized to adjudge her the right to deal with her real estate to the extent that it will not conflict with any vested interest which her husband has acquired therein.

8   Husband and Wife—Feme Sole Proceedings—Grounds.—A court of equity has no jurisdiction to declare a wife a feme sole as to her property for the sole purpose of enabling her to deprive her husband of the use of her real estate which he had acquired prior to the Weissinger act of 1894, Ky. St. section 2127.

GRANT E. LILLY and RIDDELL & FRIEND for appellant.

SMITH & SMITH and W. H. LILLY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In December, 1907, Polly Fowler filed suit in the Estill circuit court against her husband, Louis Fowler, for divorce from bed and board, and in the same action sought to have a verbal contract relative to their respective property rights enforced, and to recover from her husband certain moneys and articles of personal property which she alleged belonged to

her. The ground relied upon for divorce was a failure to provide for her a suitable support. By an amended pleading, filed thereafter, she sought an absolute divorce upon the ground of cruel and inhuman treatment. The grounds for both the partial and absolute divorce were traversed, and, in addition, appellee pleaded affirmatively that his wife had left his home without fault on his part, and he extended to her a cordial invitation to return and resume the marital relations with him. Pending this litigation appellant filed a separate suit, wherein she sought under the provisions of section 6, art. 2, c. 52, Gen. St., to have herself created a feme sole. Proof was taken and the two cases heard together. The chancellor adjudged that there was a total failure on the part of appellant to make out a cause of action supporting her claim for either partial or absolute divorce and dismissed that petition. He also sustained a demurrer to the petition wherein she sought to be made a feme sole, upon the ground that the Weisinger or married women's act, same being section 2127 of the Kentucky Statutes, invested appellant with all of the rights, powers, and privileges which she sought to have herself invested with by order of court, and that, therefore, the suit was a useless and wholly unnecessary proceeding. From that judgment this appeal is prosecuted.

The parties to this litigation were well advanced in years when they were married in 1891. Each had theretofore been married. Appellant had acquired from the estate of her deceased husband a comfortable home, about $1,200 in money, and such household goods, live stock, farming implements, etc., as may usually be found in and about the average country home. No children were born to her from her first

marriage.  Appellee had nine children, the youngest twins.  He had a home and some personal property, though he was in debt.  Following their marriage, he and his children moved to the home of appellant, where he has since resided.  No children were born of this union.  Shortly before or about the time of her separation  from appellee,  appellant bought a small home near Irvine,, Ky., where she has been living since here separation from her husband with a relative.

It is argued in brief that appellant was compelled to and did leave her husband and her home because her husband suffered and permitted his children to mistreat her and render her home life unhappy to the extent that it became unbearable. Upon this point there is a total failure of evidence.  None of the witnesses who have testified go further than to say that at times the boys would not mind their step-mother. No witness testifies to any mistreatment other than that the boys would at times fail to do chores, such as cutting wood, driving up the cows, etc., when requested by appellant, and no witness testifies that on such occasions appellant complained to her husband that she was not receiving proper  treatment from his children, or that they were failing and refusing to mind her and do as she directed in the conduct  and  management of the home affairs.   All agree that appellee is a kind-hearted, good-natured, upright citizen, and that his treatment of his wife was at all times such as showed him to be a dutiful respectful, and appreciative husband.   Two single instances are cited during the course of their married life as evidence of misconduct on his part toward his wife.  One witness testifies that appellant became offended at her husband, because, as she said, he was

all the times throwing up to her a neighbor and the neighbor's children. This conversation grew out of a charge on the part of appellant that appellee's children were leaving the gates open and the bars down, while appellee insisted that these acts were done and committed by the neighbor's children rather than his own, or as much as his own, and that she should not blame his children altogether. On another occasion a dispute arose between appellant and one Flynn as to the terms of a verbal contract. He agreed to leave it to appellee, and stated that, if appellee said the contract was as his wife claimed it to be, he would abide by it and perform it according to her contention. This seemed to greatly offend appellant, and she stated that, if her husband sided with Flynn and against her, she would leave him and no longer live with him. Thereafter appellant was sued on this contract, but it never came to trial. It was compromised and appellant paid at least a portion of the attorney's fee for opposing counsel. These are the only substantial evidences of cruel and inhuman treatment offered, and they amount to nothing. If, in fact, a neighbor's children had left the bars down and the gates open, and she was charging her husband's children with neglect in this particular, we fail to see wherein he was at fault if he told his wife that the blame was not altogether with his own children; and, even if she had been entirely right and her husband entirely wrong as to which set of children were responsible for the acts complained of, they were certainly not of that gravity, nor is the statement attributed to him of such gravity as to authorize a separation. Nor was it any reflection upon her character, or cruel or inhuman treatment of her, if her husband should not remember the terms of a con-

tract as his wife would have him. If the matter were submitted to him, or he were called as a witness in the case, it would have been his duty to have stated the terms of the contract as they were, even though his wife, a party in interest, was prejudiced by his statement, and, if he spoke the truth, his wife was afforded no just ground of complaint thereby. In fact, from the statements which she is alleged to have made relative thereto, it is quite plain that, if any ground of complaint grows out of that transaction, it is altogether on the side of the husband.

The bonds of matrimony are not severed on light, trivial, or inconsequential grounds. During the course of a long married life it is but natural that there should be differences of opinion at times between husband and wife. Questions will come up that are calculated to create more or less friction. Such is to be expected. No husband can at all times have his tongue oiled and his words sugar coated, nor is his wife expected to be at all times in the sweetest of dispositions, but slight differences of opinion and occasional exhibitions of ill temper are but natural and to be expected, even in the best of well-regulated households. Such acts, however, furnish no ground or foundation for a legal separation. Where cruel and inhuman treatment is relied upon as a ground for divorce, it must have continued for not less than six months and been of such a character as was calculated permanently to destroy the peace and happiness of the wife, and show a settled aversion on the part of the husband for his wife. Nothing short of such showing will authorize the granting of a divorce upon this ground. As above stated, the evidence in this case falls far short of meeting the statutory requirements, and the chancellor correctly held that the plaintiff had failed to make out a case.

Nor is there any evidence in the record even tending to establish the charge that appellee failed to provide for his wife. It is shown by the evidence of all the witnesses that he was a man of average industry and economy, earning what he could, and devoting all of the proceeds of his earnings to the maintenance and support of his family, including appellant. It is true that quite frequently during the course of their married life she spent freely and liberally of her own money in the purchase of supplies for the house and clothing for the children. These acts on her part were most commendable. She is shown to have been a hard-working, painstaking woman, and deserving great praise for the motherly attention which she bestowed upon her husband's children. But the money which she spent in aiding her husband to support and rear his children and make their home comfortable and convenient was a voluntary contribution on her part and one which at that time she evidently had not the slightest intention of demanding, or expectation that it ever would or should be returned to her.

Under the law in force at the date of their marriage, appellee acquired certain rights in the property of appellant, of which, under the authority of Rose v. Rose, 104 Ky. 48, 46 S. W. 524, 20 Ky. Law Rep. 417, 41 L. R. A. 353, 84 Am. St. Rep. 430, Mitchell v. Violett, 104 Ky. 77, 47 S. W. 195, 20 Ky. Law Rep. 1907, Phillips v. Farley, 112 Ky. 837, 66 S. W. 1006, 23 Ky. Law Rep. 2201, and Helm v. Board, 114 Ky. 289, 70 S. W. 679, 24 Ky. Law Rep. 1037, he cannot be divested. These rights as to her real estate are controlled by section 1, art 2, c. 52, Gen. St. so much of which as is material is as follows: "Marriage shall give to the husband, during the life of the

wife, no estate or interest in her real estate  *  .*  *
except the use thereof, with power to rent the real
estate for not more than three years at.a time and
receive the rents.'' As to her personal estate, he
acquired an absolute title to so much thereof as he.
reduced to possession prior to the date upon which
the Weisinger act enlarging the rights of married
women, went into effect.    Any personal  property
which she owned when said act became  operative,
and which had not been reduced to possession by her
husband, and which has not since been expended by
her, may be held by her free from any control by her
husband.  So likewise any real estate which she may
have acquired since said act became operative may
be held, used, and enjoyed by her free from the con-
trol of her husband.  But in all real estate which she
owned at the date of their marriage her husband has
an interest of which he cannot be deprived during her
life; and, although the enforcement of this right may
have the effect to permanently deprive appellant of
the enjoyment of the dowry which she received from
her first husband, it is a condition which results from
no fault on the part of appellee.  She has lost  this
right by abandoning her husband.

The chancellor.directed the farm, or certain por-
tions thereof, to be rented out and a part of the rent
paid to appellant for her support and maintenance
pending the litigation.  Now, that the suit has been
determined adversely to her interest no further pay-
ments should be made under said order, as appellee
is entitled to the rent of the farm, and he is under no
legal obligation to support his wife at any place other
than his home.

In requiring appellant to pay the costs of the pro-
ceeding in the lower court, the chancellor but exer-

cised a discretion given him by section 900 of the
Kentucky Statutes, which provides "that in actions
for alimony and divorce the husband shall pay the
costs of each party, unless it shall be made to appear
in the action that the wife is in the fault and has am-
ple estate to pay same." The agreement as to prop-
erty rights, set up at length by appellont in her pe-
tition, is unsupported by evidence of any character.

This leaves for our consideration only the correct-
ness of the court's ruling in sustaining a demurrer
to the petition of appellant in which she sought to
be made a feme sole. As the act of 1894 gives her
all of the rights and privileges as to her personal
property that the court is authorized, under section
6, art. 2, c. 52, Gen. St., to grant, so much of her pe-
tition as seeks this relief is clearly unnecessary. The
Legislature in enacting the law giving to married
women this enlarged power over their personal prop-
erty relieved them—appellant included—of applying
to a court of equity for relief as regards
such property, and in effect repealed the old
law to this extent. Has a married woman
the right, under existing law, to be created
a feme sole in order that she may have, use,
and enjoy, free from the control of her husband, her
real estate which she owned prior to the passage of
the act of 1894? It will be observed that the act, au-
thorizing the chancellor to declare a married woman
a feme sole, provides that it can only be done by the
joint petition of both husband and wife, or upon the
petition of the wife, the husband being made a party
thereto, and then only upon satisfactory evidence that
there is necessity for granting the relief sought. If
the husband should join the wife and ask that such
power be conferred upon her and the court should,

upon evidence heard, grant same, he could not there-after be heard to complain because she was given this right. In other words, he would be estopped. But, if the wife alone should sue and the husband be made a party defendant to the suit, the chancellor would be authorized to adjudge her the right to deal with her real estate only to the extent and in so far as it might not conflict with any vested interest which her hus-band had therein.  If he has such rights, they cannot be taken from him except with his consent.  Hence it is extremely doubtful if, as regards the wife's real estate acquired prior to the passage of the Weisinger act, she can be empowered to deal with it as though a single woman under any state of case where her mar-riage took place prior to the passage of said act.  But it is unnecessary to dispose of that question here, for the reason that, in order to state a good cause of action under the law as it existed prior to the passage of the Weisinger act, it was necessary that the plea or petition should show the necessity for granting the relief sought.  In the case at bar this essential ele-ment is lacking.  The reasons assigned are not such as would justify the chancellor in granting the relief. On the contrary, it appears that appellant's purpose in seeking the decree is to enable her to deprive her husband of the use of her real estate, which, as herein stated, could not be done.  The petition did not state a good cause of action, and the demurrer should have been sustained.

Perceiving no error in the record, the judgment in each case is affirmed.