### Kearns v. Kearns.

(Decided December 9, 1914.)

#### Appeal from Harrison Circuit Court.

Divorce—Cruel and Inhuman Treatment—Evidence.—Evidence held insufficient to show treatment of a character calculated to destroy permanently the peace and happiness of the wife, and show a settled aversion on the part of the husband for her, continued not less than six months, so as to warrant a divorce.

WADE H. LAIL for appellant.

HANSON PETERSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Lummie Kearns, brought this action against her husband, R. P. Kearns, for divorce and alimony. The ground on which the divorce is sought is that he behaved towards her for not less than six months in such cruel and inhuman manner as to indicate a settled aversion to her, and to destroy permanently her peace and happiness. The chancellor refused plaintiff the relief asked, and she appeals.

Plaintiff is 42 years of age and defendant is 47 years of age. They were married in February, 1892. They have six children, the oldest being 20 years of age, and the youngest nine years of age. At the time of their marriage defendant owned a half interest in 76 acres of land, his brother owning the other interest. Both plaintiff and defendant were frugal and industrious. They were each animated by a praiseworthy ambition to get ahead in the world, and neither ever shirked any work that was necessary to attain this end. It appears that they lived happily together until about the year 1912. During all this time defendant permitted plaintiff to sign his name to checks. In spending her own and her husband's money plaintiff was always quite economical.

In the fall of 1911, Henry and Willie Kearns, distant relatives of defendant, came from Illinois to Kentucky on a visit. These young men were blind. Henry was about 27 years of age, and Willie 25 years of age. They possessed some musical talent, and proceeded to give a large number of entertainments at the school houses in the vicinity of defendant's residence. Plaintiff attended a number of these entertainments in her immediate neighborhood and at other places. Sometimes plaintiff took the boys visiting. The boys also spent a good portion of their time at the home of plaintiff and defendant. When the boys returned to Illinois, plaintiff and Willie Kearns agreed to correspond with each other. In order to be able to do this, plaintiff learned the Braille system of writing. This correspondence continued for some time. About the middle of August, 1912, plaintiff and one of her children, over the objection of defendant, visited the father and mother of the blind boys, who lived in Clay City, Illinois. After remaining there three or four weeks, she returned to her home, and brought the blind boys with her. Soon after plaintiff's return, defendant concluded that plaintiff thought more of Willie Kearns than she did of the members of her

own family, and began to exhibit some signs of jealousy. On the Friday before the Tuesday of the separation, defendant went to the pantry where his wife was at work. According to her version of the affair, he said, "You didn't stay long in the room with Willie." Plaintiff said, "I wasn't in the room with him. What do you mean?" Defendant said, "I will tell you." The following Sunday evening defendant met plaintiff at the gate. When they reached the buggy house defendant said, "Your mother, your father, your brothers and the whole world is talking about you." Sunday night defendant came to plaintiff, and, according to her story, looked like he could kill her. He shook his head at her, and when she asked him what was the matter, he said, "I will tell you." On Monday defendant said to plaintiff, "You threatened you would leave. Now is your opportunity." She replied, "I am not going to be mad at you, and I will not fuss with you, but I can go away." She then asked if he would give her her part, and he said, "I will." There is also evidence to the effect that defendant said that his wife's departure was all his fault, and that after she left he stated to a few people that her mind was wrong. He also offered to have her examined and sent to a sanitarium.

According to the evidence of the defendant, he did not say to plaintiff that she did not stay in the room very long with Willie. His remark was, "He did not sleep long when she did not mind the flies off him." A number of people had spoken to him about his wife's relations with Willie Kearns. He remonstrated with her about it. His wife had frequently threatened to leave. When he took the blind boys to Sunrise his wife said, "If you don't like the way I am doing, I can leave." As she had been making threats before, he said, "You can go." He took the boys to Sunrise on Tuesday morning, and when he returned plaintiff had gone to Clay City, Illinois. Defendant wrote to her to return and sent his brother-in-law after her. In about two weeks she returned to his home, and remained there until the following April 21st, when she again left his home and went to Cynthiana. A number of defendant's neighbors who had an opportunity to observe his relations with his wife, testified to the fact that he always treated her in a kind and considerate manner. His evidence further shows that his wife's conduct towards Willie Kearns was the subject of discussion by members of her family and by the neighbors.

There is further evidence to the effect that Mrs. Kearns was not well physically. Her condition was such as to require an operation, and she was more or less nervous because of this condition.

We deem it unnecessary to set out the evidence in detail. We have carefully considered the record. It is certain that no trouble occurred between the parties until the coming of the two blind boys, while the record clearly shows, and it is admitted by everyone, that Mrs. Kearns was guilty of no wrong-doing in her relations with Willie Kearns, yet it is also apparent that her attentions to and interest in him were so pronounced as to make her conduct the subject of neighborhood gossip. In view of this fact, it cannot be contended that defendant did not have the right to remonstrate with her, and to call her attention to the fact that her actions were being canvassed by her family and friends. It is doubtless true that the defendant became jealous when he saw that his wife appeared to take more interest in Willie Kearns than she did in the members of her own family. While it may be true that her interest was doubtless due to her sympathy with the boy, it is also true that her interest was so pronounced as to cause comment and make her husband feel that he and his family were being neglected. Great stress is placed on the alleged statement of defendant to the effect that plaintiff did not stay in the room long with Willie. It is insisted that the defendant, by this language, charged plaintiff with want of chastity. In our opinion, however, the language does not bear such a construction, especially when considered in the light of defendant's considerate treatment of his wife. All the occurrences on which plaintiff relied took place within three or four days. It may be that defendant should not have told plaintiff that she could go, but it is shown that he repented of this act by writing for her to come home and sending his brother-in-law for her. After her return to his home, she and her daughter say that defendant cast slurs and insinuations at her, but they are unable to give any specific instances. It is not every exhibition of temper or improper remark that will justify the granting of a divorce. The law, out of consideration for human weakness, recognizes the fact that all of us are liable at times to lose self-control, and make remarks which we would not make in our calmer moments. For this reason the statute provides that where cruel and inhuman treatment is relied on, it must

have continued for not less than six months. Fowler v. Fowler, 138 Ky., 326. As before stated, here the acts relied on as a ground for divorce all occurred within three or four days, and after plaintiff's return from Illinois there are no specific instances of any unkind treatment, aside from the vague and general statement that defendant threw out slurs and insinuations against the plaintiff, and defendant's remarks to others that he believed plaintiff's mind was unsound. That these remarks were not intended as unkindness cannot be doubted. Plaintiff was ill and nervous. Her conduct was being criticized. Defendant referred to her condition of mind for the purpose of excusing her conduct, and with a view of having her treated in a sanitarium. It is plain that he had no other purpose in view. After carefully considering the record, we agree with the chancellor that plaintiff has failed to make out her case. Our consideration of the record further convinces us that there is no substantial reason why these two good people should not now be living together with the same love and in the same spirit of mutual helpfulness that characterized their married life for a period of twenty years.

Judgment affirmed.