### GELLATLY v. GELLATLY.

DIVORCE—EXTREME CRUELTY—NONSUPPORT.

Evidence that defendant husband was in good health and of sufficient ability to earn a living for himself and wife, that during the early part of their married life he had lost or squandered a fortune of $100,000 and for two years prior to the filing of the bill had paid nothing toward the support of his wife, and that the wife was without means of support and was compelled to work as a telephone operator, was sufficient to require the court to enter, on appeal, a decree of divorce, reversing the action of the circuit judge in denying the relief prayed for in complainant's bill.[1]  3 Comp. Laws, § 8622; 4 How. Stat. (2d Ed.) § 11459.

Appeal from Oceana; Sullivan, J. Submitted January 11, 1915. (Docket No. 66.) Decided April 6, 1915.

Bill by Mabel M. Gellatly against Roy K. Gellatly for divorce. From a decree for defendant, complainant appeals. Reversed.

*A. S. Hinds*, for complainant.

---

[1] The question of the failure to support wife as cruelty is discussed in a note in 43 L. R. A. (N. S.) 260.

BROOKE, C. J.   Complainant seeks a divorce from the defendant on the grounds of nonsupport and extreme cruelty.   She was married to the defendant on July 14, 1910, at which time both she and defendant were just under 21 years of age.   Defendant became of age on October 12, 1910, and at that time received from the estate of his foster mother in Chicago a fortune of about $100,000.   He immediately embarked on an extravagant scale of living.   He purchased a dry goods business in the town of Shelby, and for a short time seems to have made a pretense of doing business there.   He bought some lots in Shelby and proceeded to erect an elaborate residence thereon. He seems to have spent money freely in every direction, with the result that before he was 22 years of age he had dissipated practically his entire fortune. A receiver had been appointed when his financial difficulties became oppressive, and after his debts were paid there remained about $4,000.   This sum was divided by the receiver between the complainant and defendant.   Complainant loaned her $2,000 to the telephone company at 6 per cent. interest, taking a secured note therefor.

The defendant with his last $2,000 went on a trip to Florida and there became interested in a land scheme, in which he lost all the money he had.   While in Florida he sent to Tiffany & Co., of New York, for three diamond rings valued at about $1,800.   The rings were sent on consignment, the understanding being that he should select one, pay for it, and return the other two.   As a matter of fact, he kept all three and paid for none.   One of these rings he presented to a young lady in Florida, to whom he was very attentive during the winter of 1912-1913, and to whom, although he was married, he was said to be engaged. Another one of the diamond rings he seems to have exchanged for a motor boat in Florida.   What became

of the other the record does not disclose. Later, in Chicago, he was threatened with criminal prosecution for passing worthless checks. Information of his situation coming to the ears of his wife, she·borrowed $500 with the aid of her father, and went to Chicago and settled his difficulties. Later still the Tiffany claim was sent on to an attorney for collection, or for the institution of criminal proceedings for embezzlement, against defendant. Whereupon complainant took the note representing her $2,000, ·disposed of it, repaid the $500 which she had borrowed to use in Chicago for defendant's purposes, and with the balance paid the Tiffany claim. Only $80 remained after these matters were adjusted.

Prior to her marriage to defendant, complainant had a position as a telephone operator. After her marriage, although she resigned her position in the telephone office, she, with her husband, continued to live in the home of her father, Mr. Morningstar. Never since her marriage to defendant has she had a home apart from her father, and during all the time since her marriage her husband has not only failed to pay her father for her board or the board of himself, for he likewise lived with her father with complainant whenever he was in Shelby, but he likewise borrowed small sums of money from his father-in-law totaling about $50 or $75. Early in 1913 complainant again secured a position as telephone operator. She testifies that at that time the defendant had furnished her absolutely nothing by way of support for upwards of a year. He continued, however, from time to time to reside in Shelby until October, 1913, when without notice he disappeared. The bill in this case was filed on January 6, 1914. It is the testimony of the complainant that for more than two years she had received no support of any character from the defendant. She testified to the fact that

he had lost or squandered his fortune, but further said that he was a young man of fair education, of good health, and amply able, if willing, to furnish her with an adequate support. Complainant's testimony as to defendant's failure to work or support her was corroborated by that of her father, who testified that he had boarded his daughter from the time of the marriage on.

The defendant was personally served with process in the case, but failed to appear. The learned trial judge who heard the case declined to grant a decree to complainant, being of the opinion that the testimony was insufficient to support the charge of gross, wanton, and cruel refusal to support within the meaning of the statute. Although the record does not clearly disclose his reasons, because no written opinion was filed, he seems to have been somewhat influenced by the fact that the fortune of the defendant had been squandered by him during the first year of his married life, and that complainant might have participated in spending the money as readily as her husband. The record does not clearly show this to have been the fact, but even if it did, we are of opinion that the duty of a fairly educated healthy young man to support his wife is not abrogated by reason of the fact that he and his wife together had theretofore foolishly joined in squandering his patrimony.

The record shows that some time during their married life defendant caused to be conveyed to complainant 160 acres of wild land in Minnesota. The value of this land is not shown, although it appears affirmatively that it is located a long distance from any railroad and is absolutely unsalable, and at the present time it would seem to be a liability rather than an asset to the complainant, as she testified that the taxes which she was obliged to pay amounted to about $30 per annum.

185 Mich.—25.

In addition to the charge of nonsupport, the bill contains a charge of extreme cruelty, based upon the averment that the defendant improperly associated with women other than his wife. Whether the testimony in support of this charge is sufficient to warrant relief we find it unnecessary to determine, for the reason that the record clearly establishes the following undisputed facts:

(1) The husband is of good health and sufficient ability to earn a living for the wife.

(2) The wife is without means of support, except such as she earns for herself as a telephone operator.

Under this evidence we think it clear that the defendant's refusal to support is gross, wanton, and cruel within the meaning of the statute. 3 Comp. Laws, § 8622 (4 How. Stat. [2d Ed.] § 11459); Brown v. Brown, 22 Mich. 242; Cary v. Cary, 106 Mich. 646 (64 N. W. 510); and Whitacre v. Whitacre, 64 Mich. 232 (31 N. W. 327).

The decree of the court below is reversed, and a decree will be entered in this court in accordance with the prayer of complainant's bill of complaint.

MCALVAY, STONE, OSTRANDER, and MOORE, JJ., concurred with BROOKE, C. J. KUHN, BIRD, and STEERE, JJ., concurred in the result.