## HOLMAN v. HOLMAN.

No. 5961. Decided March 18, 1938. (77 P. [2d] 329.)

JUDGMENT VACATED, WITH DIRECTIONS.

*Jensen & Jensen,* of Ephraim, for appellant.

*P. J. Sanders,* of Nephi, for respondent.

WOLFE, Justice.

Appeal from a judgment granting plaintiff a divorce on the ground of willful neglect to provide for the common necessaries of life. Defendant counterclaimed by amendment for divorce on the grounds of cruelty. The couple were married on September 18, 1930. Plaintiff was then 18 years of age. They have one child, a girl now over 5 years of age. Appellant raised by the assignment of errors ten questions. We will consider only one. Does the evidence show a willful failure to provide? We think it not only does not show a willful failure to provide, but does not show a failure to provide according to the standard required by the condition and social rank of the parties. It is true she did not receive all the clothes that she could have used and was forced to wear her dresses and coats longer than her pride would have liked, but he was out of work during 1932 and 1933. He made a little over $200 in 1934, more than $300 in 1935, and more than $400 in 1936. They lived

since marriage at his father's house. It had seven rooms. The father owned 54 acres of land, part of which was irrigated by rented water. He also owned a house and three lots in Fountain Green. They raised their own vegetables and fruit. They were plentifully supplied with milk, eggs, and butter. For a number of months in 1934, 1935, and 1936, she sold excess milk and butter, making, as she testified, $51 from that source. Her father-in-law calculated it to be $135 in 1935 and 1936, and $36 before 1935. She testifies to having personally saved, doing various jobs, $67.50. She said she spent on herself, on the child, and on the house, stove, and washing machine a total of $125.05. Her own figures show that unless she received money from her husband, or had some of the purchases charged which he paid, that she made at least $57.55 from selling milk and butter. She thought it was $51. But all this milk and butter came from cows either owned by the father-in-law or donated by him. He furnished the house, the water, heat and light. Several neighbors testified that plaintiff was dressed as well as the ordinary farmer's wife in that vicinity; that they had sufficient good substantial food at the frequent times when they came to the house during meals. There was mutton from the sheep of the father-in-law and chickens to furnish the meat. The proceeds from the excess of milk, butter, and eggs, sold by her and used for the family, derived from stock supplied by the husband directly or indirectly, must be accredited to him. Money earned taking care of an old lady, washing clothes, making quilts, or at a "hot dog" stand, may personally belong to her, but in times of a depression, when the other spouse is out of work, too much emphasis should not be placed on separate earnings. Marriage should be considered a community venture. Both came from families which were anything but wealthy. There is nothing in the record which shows him to be shiftless or slothful. He appears to be a plain farmer boy not aggressive in character but not lazy, and willing to work when there was work. He took farm work on the farm

when he could get it. He worked on WPA jobs and on his father's place when he was not occupied elsewhere. Only infrequently did he give her any money, but he did not have it to give. Moreover, he knew she was selling the excess milk and butter. There is no evidence that he hindered her from using the money she made on her own pleasures.

Nothing will be gained in retailing this record of 370 pages. Much of it is repetition Much of it deals with the ownership of articles like quilts and a few bushels of potatoes, matters which were of much concern to them but not to the broad field of the law. We have read all of it, but a mere reading of plaintiff's testimony on direct and cross-examination shows that she had difficulty in building up a case against her husband. It is not without significance that after returning from a two months' visit with her sister in Helena, Mont., where she thoroughly enjoyed herself in that middle-sized city, she becomes dissatisfied. She returned on November 6th. On November 18th she leaves for her home in Moroni. On rebuttal she herself said, "I want to go back [to Montana] and make some money and have a life." This sums up the situation.

We have doubt whether the evidence even goes so far as to establish failure to provide in the manner required by the social rank and condition of the parties. *Fowler* v. *Fowler*, 138 Ky. 326, 127 S. W. 1014; *Runkle* v. *Runkle*, 96 Mich. 493, 56 N. W. 2; *Baker* v. *Baker*, 82 Ind. 146; *Keeler* v. *Keeler*, 24 Wis. 522. But there is no doubt that there was no willful failure to provide. The failure, to be willful, must be intentional or of such callous neglect and indifference as to be equivalent to an intentional failure. *Whitacre* v. *Whitacre*, 64 Mich. 232, 31 N. W. 327; *Taylor* v. *Taylor*, 20 N. M. 13, 145 P. 1075; *Weishaupt* v. *Weishaupt*, 27 Wis. 621; *Thompson* v. *Thompson*, 79 Me. 286, 9 A. 888; *Seigmund* v. *Seigmund*, 46 Wash. 572, 90 P. 913; *Gellatly* v. *Gellatly*, 185 Mich. 382, 151 N. W. 1037.

The court well remarked that it seemed useless to keep these two young people together. There seemed to be in-

sufficient provocation to grant the defendant the divorce so he chivalrously granted it to plaintiff. But the Legislature has laid down grounds on which divorce may be granted. They must be present. The mere drifting apart because of failure to synchronize interests or ambitions is no ground for a divorce although it may be that the parties cannot and should not be compelled to live together. In this case the divorce carried $15 a month alimony and support money for the child. He is fond of the child and craves her society. She is now nearly 6 years of age, old enough to spend a portion of her time, when her schooling will not be interfered with, in the society of her father. In case a divorce is properly granted and no good reason appears for denying the father custody of the child for a portion of the year, the decree should provide for a period of such custody, and the means of conveying her to the father if she is living a distance from him.

The judgment is vacated, with instructions to grant a new trial, allowing proper amendments if either party desires to proceed. The parties to bear their own costs.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.