## Walker v. Milliken, Assignee of J. A. McGoodwin.

(Decided October 16, 1912.)

### Appeal from Simpson Circuit Court.

1. Wills—Investment in Bonds—Obligation by Executor—Assignment of Executor—Action by One of the Heirs—Interest in Bonds

—Defense—Plea of Limitation.—McGoodwin died in 1883 directing his executor, among other things, to invest a sufficient sum of money in bonds to yield an annual income of $500.00 to be paid to his widow. The investment was made and the income paid as directed to the time of the assignment of the executor for the benefit of his creditors, though in the meantime the bonds were sold by him in the interest of a business venture, but without his mother's objection. By another clause it was provided that at the death of his wife the real estate and personalty, including the money directed to be invested in bonds, should be equally divided among his six children; and that for this purpose the real estate could be sold and conveyed by the executor. On January 16, 1894, the executor executed and delivered to appellant, one of the heirs, his obligation agreeing to pay her $1,500.00, being one-sixth of the annuity fund provided by the will, the obligation to be due at the death of his mother, at which time the fund should be distributed equally to the six heirs. Subsequently, he executed a deed of assignment of all his property to Milliken in trust for the benefit of his creditors.

2. Following the death of the widow, the assignee brought his action for the settlement of his trust estate, and appellant filed her separate action against him upon her claim for the $1,500.00, seeking to have her claim adjudged a preferred claim under section 74 Ky. Stats. Milliken interposed the defense that appellant had acquiesced in the sale of the bonds and in the trustee's use of the money, and that the execution of his obligation to her worked an alteration of her relation and that her position now was that of an individual or general creditor, and upon the trial the court held with the assignee, and refused to allow the claim as a preferred claim under the statute. Held, That there is no pleading by the assignee of any state of fact such as would suffice to work an estoppel against appellant. It is not shown that the position of the creditors was altered to their hurt by any action of appellant. She sued within five months after the death of her mother, and the right to her to sue and the obligation upon her to sue were not contemporaneous until the death of her mother.

3. Same—Action by Wife—Question as to Joinder of Husband—Weissinger Act.—As to the question as to whether the appellant could maintain the action unless her husband should join with her, having been married before the passage of the Weissinger act, the claim not having been reduced to the possession of the husband, she could sue for it without the husband's joining with her.

LEWIS McQUOWN, GEORGE C. HARRIS for appellant.

G. W. WHITESIDES for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

One James L. McGoodwin died prior to 1883. He left surviving him a wife, Delia P. McGoodwin, and six children, Mrs. Eva Walker, J. A. McGoodwin, W. H. McGoodwin, Hattie McGoodwin, Fannie McGoodwin and Mrs. Bird McGoodwin Finn. He left a will, which was probated in 1883. The third clause of his will is as follows:

"I also will that my executors hereinafter named shall invest, in good safe bonds, a sufficient amount of money to yield an anual income or interest of $500, which said bonds shall be taken and held in the name of my son, James Albert McGoodwin who shall pay said income or interest over to my said wife, Delia P., as soon, and at all times, when collected during her natural life."

The seventh clause of the will is as follows:

"It is my will that at the death of my wife, Delia P., that the real estate together with the personalty, including the money directed to be invested in bonds in paragraph 3rd herein be equally divided between my six children aforesaid. And for this purpose the real as well as the personal estate herein may be sold and conveyed by my son, James Albert, as my other real estate is directed in paragraph 6th to be sold and conveyed."

The eleventh and twelfth clauses of the will nominate the wife, Delia P., and the son, James Albert, as executors without bond. Upon the probate of the will the nominated executors qualified without bond.

The testator owned at the time of his death six one-thousand-dollar Logan County bonds. Shortly after the probate of the will, J. A. McGoodwin, the executor, carrying out the provisions of the third clause of the will, bought three additional one-thousand-dollar bonds, which together with the six Logan County bonds named made an investment of $9,000 in bonds. These were six per cent bonds, yielding a net revenue of about $500 per annum, the amount directed by the third clause of the will to be paid annually to Mrs. Delia P. McGoodwin during her life. These nine bonds were held by the son, J. A. McGoodwin, and the annual income of $500 from them was paid to his mother as provided by the will, down until the year 1893 or the early part of 1894, when they were sold by J. A. McGoodwin and the proceeds of them were turned into the general estate of J. A. McGoodwin and used by him in his individual business ventures. His mother was apprised of his purpose to sell

them at the time of the sale and seems to have made no objection. After the sale he continued to pay his mother $500 per annum down until the time of his assignment for the benefit of his creditors, post.

On January 16, 1894, J. A. McGoodwin prepared in his own handwriting the following document:

"$1,500.                          Jany. 16, 1894.
"For value received I promise and agree to pay to Eva McG. Walker Fifteen Hundred Dollars being the one-sixth of the annuity fund provided for by the will of J. L. McGoodwin interest from which to be paid to Mrs. D. P. McGoodwin. It is agreed and understood that this obligation is not due or does not bear interest until the death of Mrs. D. P. McGoodwin, at which time the fund is to be distributed equally to the six heirs of J. L. McGoodwin.
                    "J. A. McGoodwin."

This document was delivered by J. A. McGoodwin to the husband of Mrs. Walker. The husband took the document to his wife. She read it and without comment or observation returned it to her husband. At the time of the execution of this document, J. A. McGoodwin executed four others of like import, one each in favor of his brother, W. H. McGoodwin, and his sisters, Hattie McGoodwin, Fannie McGoodwin and Mrs. Bird McGoodwin Finn. This brother and these three sisters were all living at the time at distant points from the home of J. A. McGoodwin. He did not deliver any of the four documents named, but put them and kept them among the papers appertaining to the settlement of his father's estate. Within the course of a few months he seems to have advised each of the four, as he would see them time from time to time, of his sale of the bonds.

In January, 1905, J. A. McGoodwin executed a deed of voluntary assignment of all of his property to the appellee, J. J. Milliken in trust for the benefit of his creditors. Milliken accepted the trust and duly qualified as the assignee.

Mrs. Delia P. McGoodwin died on October 9, 1910. In March, 1911, in an action theretofore brought by Milliken as assignee in the Simpson Circuit Court for the settlement of J. A. McGoodwin's assigned estate, an order was entered permitting Mrs. Walker to file a sepa-

rate action against the assignee upon her claim asserted against him for $1,500, one-sixth of the $9,000 fund devised in the third clause of the will to Mrs. Delia P. McGoodwin for life, with remainder to the testator's six children. Following the privilege granted by this order, Mrs. Walker filed such an action on March 29, 1911. She sought in the action to have her claim adjudged to be a preferred claim under that portion of section 74 of the Kentucky Statutes, a part of the chapter upon voluntary assignments, which reads as follows: "Debts due by the assignor as guardian, committee, trustee of an express trust created by deed or will, or as personal representative, shall be paid in full before the general creditors receive anything." The principal defense interposed by Milliken, the assignee, was that Mrs. Walker had acquiesced in the sale of the bonds and in the trustee's use of the money in his individual business; that the execution and delivery of the paper above quoted had worked an alteration of Mrs. Walker's relation of a cestui que trust to that of an individual or general creditor of J. A. McGoodwin; and that her claim, therefore, was not entitled to a preference over the claim of the general creditors of J. A. McGoodwin. Upon preparation and trial, the trial court held with the assignee and refused to allow the claim as a preferred claim under the statute, supra. From the trial court's judgment Mrs. Walker appeals here. Other matters of defense were interposed by the assignee and will be treated of later. The main question is upon her right to the preference.

In the first place, it is to be observed that there is no pleading by the assignee of any state of fact such as would suffice to work an estoppel in the general sense of that term, against Mrs. Walker and in favor of the creditors. It is nowhere alleged nor shown that their position or that of J. A. McGoodwin was altered to their or his hurt by any position affirmatively taken or negatively indulged in by Mrs. Walker. The defense is rather based upon that lesser form of the law of estoppel known among the writers as an election; that is, that having had an opportunity to elect to insist upon a continuance of the bond investment upon the one hand and the personal use of the money by her brother upon the other, and having elected the latter by her silence upon the receipt of the paper—and the record shows no action by her other than silence—she will not now be heard to say

that the trust provided for in the will yet stands as a trust and that the fund provided for in the will is yet a trust fund. As we understand the appellee's position, it is that her silence was an acquiescence, and that, having acquiesced, she cannot gainsay that in which she acquiesced. For the present it is unnecessary to approve or disapprove his contention; as there is the preliminary question of whether she ever was silent when she could and should have spoken, of when her right to speak and her duty to speak first were contemporary. For if she had the right to speak and was under no obligation to do so, her silence, however long protracted, cannot conclude her rights unless her silence has led someone else to his hurt. And it is equally clear that though some legal duty might lie upon her to renounce or denounce the particular act in question, she will suffer nothing by her mere failure to speak until the time has come when she has the right to speak—the right to ask in law for that which is hers—provided again the mere fact of her silence has not misled another to his injury. Mrs. Delia P. McGoodwin died in October, 1910. As long as she lived she was entitled to the usufruct of this fund. Her husband's gift of it said that it should be held for her during life; and that at her death it should go to her children. Until that time, no child had the right to use one cent of its income nor principal. No one of them could control it, nor have charge of it, nor reduce any part of it to possession. We can illustrate our meaning in no better way than to designate Mrs. Walker's interest in the fund as a remainder interest. No principal is better settled than that a remainderman in real estate cannot sue for the land, the thing itself, until the termination of the life estate which precedes him. The possession of the life tenant is his possession. In Francis v. Wood, 81 Ky., 16, it was held that limitation did not begin to run against a remainderman until the right of entry existed in him at the termination of the particular estate. In McIlvain v. Porter, 7 S. W., 309, it was held that where the life tenant conveys the fee, the statute of limitation does not begin to run against the remainderman until the death of the life tenant. To the same effect are the cases of Bransom v. Thompson, 81 Ky., 387, and Jeffries, et al. v. Butler, 108 Ky., 531. It is true that it was established in the case of Simmons, &c. v. McKay, &c., 5 Bush, 25, and the case

of Kellar v. Stanley, &c., 86 Ky., 240, that a remainder-
man might maintain his action during the currency of
the life estate to preserve the estate for enjoyment when
the right to its use might accrue; but in the last named
case it was specifically held that since the right to re-
cover the land would exist for fifteen years after the ter-
mination of the particular estate, the right to quiet title
or to establish a claim to the land would not be barred
any sooner.  By parity of reasoning, the mere silence of
Mrs. Walker from the time when the document above
named was delivered to her, down until the time of her
mother's death, it not appearing that any creditor was
misled thereby, cannot at all conclude her right to speak
when she first had the legal opportunity to speak, and
to sue for that which, for the first time, she then had the
right to recover.  It is true that at an earlier time she
might have brought some action, not for the recovery of,
but for the protection and preservation of, her interest
in the fund.  She might have asked the court that bond
be required of J. A. McGoodwin, or that he be removed,
or that he be compelled to invest the fund again in bonds,
just as a remainderman, as was held in the cases supra,
might, before the ending of the preceding life estate,
bring an action to preserve the estate that it might be
present and protected for enjoyment when the re-
mainderman's right to the enjoyment first became in esse
at the termination of the particular estate; but as was
specifically held in the case of Kellar, &c. v. Stanley,
supra, the failure to bring such a protecting action
worked no ill effect upon the right to bring an action for
the thing itself when the right to the thing first accrued.
The case of Commonwealth v. Clark, 119 Ky., 85, does
not conflict with our view here.  In that case, Robert
Bedford's mother, holding title bond to the land, devised
a life estate in the land to her son, with remainder to the
Commonwealth in trust for the education of poor chil-
dren.  The statute of limitation was invoked in favor of
those claiming under Robert, against a long-time delayed
action by the trustee remainderman.  The court allowed
the application of the statute because Robert's holding
had not been as life tenant under the will; but against it,
his conduct in taking the deed to himself manifesting his
purpose to repudiate the trust estate in remainder and
amounting to a renunciation of it.  So, it was held that
the remainderman, these facts being made known, should

have brought a timely suit after the making of the deed to Robert Bedford. It was observed that if the law would imply that the title taken to himself was in trust for the beneficiaries under the will, it would only be an implied or constructive trust, against which limitation would run. In the case here, J. A. McGoodwin held as the trustee of an express trust, the continued existence of which is recognized in the document executed by him in Mrs. Walker's favor and relied upon by the assignee to defeat her preference. Again, it is to be remarked that Mrs. Walker's conduct was the conduct of non-activity, of silence, of neither approbation nor reprobation. She misled no one and no one altered his position because of her quiescence. Within five months after her mother's death, the time when her right to the thing first accrued, we find that her claim for the thing had been presented to the trustee's assignee and a litigation instituted to enforce her rights upon the assignee's refusal to concede them. During all the time preceding the death of the mother, the only relief which Mrs. Walker could have obtained was of a protective nature in such way as above indicated. The most that can be said of her is that she did not bring an action of this nature. She merely remained inactive. Judge Lindsay, speaking for this court in Covington & Lexington Railroad Co. v. Bowler's Heirs, et al., 9 Bush, 468, said: "Merely remaining passive does not deprive a party of the right to seek relief; unless, in addition thereto, he does some act to induce or encourage others to expend their money or to alter their condition, and thereby render it unconscientious for him to enforce his rights." While this excellent statement suffices to protect Mrs. Walker in her silence through all the time since the sale of the bonds, it is not necessary to relate it back so far; for, as we have indicated, she was under obligation to do nothing whatsoever until the running out of the period of her mother's life.

This doctrine of quiescence upon the part of a remainderman as affecting his right to the thing in trust has been treated of by the text-writers. In Perry on Trusts, 6th Edition, volume 1, section 467, the doctrine of estoppel by acquiescence is under discussion. It is there generally remarked that where a cestui que trust has full knowledge of all the facts and circumstances and the trustee is free from all suspicion of misrepresenta-

tion or concealment, the cestui que trust might be bound by his acquiescence in an improper investment by the trustee. The writer, however, added the statement of significant application to this case, that ''The remainder-man cannot acquiesce in an investment until his interest falls into possession, so as to be bound.'' In Hill on Trustees, 2nd Am. Ed., pp. 544-5, the English writer remarks that a beneficiary who, with full information of all the facts and with full knowledge of his legal rights, acquiesces in a prior breach of trust, may be bound by it. But the writer added: ''The acquiescence of a cestui que trust entitled in remainder after the death of a tenant for life will not be binding on him during the continuance of the preceding life estate; for until his own title accrues in possession, he has no immediate right to interfere in the ordinary administration of the trust estate.''

The case of Bennett v. Colley came up before the vice-chancellor and is reported in 5 Simon's Reports, 181. This was a case of a trust imposed upon the tenant for life of a leasehold estate, whereby the life tenant was charged with renewing the leasehold. He failed to renew. Later, in an action by the remainderman, it was adjudged that he, the remainderman, was barred by his acquiescence and laches. To this the vice-chancellor did not agree. The vice-chancellor remarked that though the failure to renew might have been the cause of an incipient damage, and though it indicated a prospective damage during the whole lifetime of the tenant for life, yet that the ultimate damage against which a court of equity might relieve would not happen until the death of the tenant for life; and the vice-chancellor expressed the further belief that though there might have been a preventive relief administered during the life of the tenant for life, the ultimate measure of justice to be distributed could not be defined or ascertained until the death of the tenant for life. He held, therefore, that the lapse of time and the silence during the life tenancy was no bar to the remainderman's action brought after the termination of the life estate. The same case came up before Lord Chancellor Brougham on a petition for rehearing. The Lord Chancellor, in an opinion reported in 2 Mylne & Keene, 225, upheld the vice-chancellor. The Lord Chancellor also remarked that if the suit had been brought during the lifetime of the tenant for life, it could

only have been brought upon an apprehension by the remainderman that the estate was about to suffer; whereupon the court, upon reasonable grounds being shown that such apprehension was founded upon just cause, might have appointed a receiver, or have compelled the trustee to have acted as his trust demanded; but that insofar as concerned the ultimate relief to which the remainderman was entitled—his right to possession—action could not have been brought for that until the termination of the life estate; and that he was not barred by his acquiescence in the conduct of the life tenant, nor by any laches in failing to sue during the currency of the life estate. A contrary view was taken by Sir John Romilly, writing as Master of the Rolls, in Browne v. Cross, 14 Beav., 105. In substance, he held that where a remainderman received knowledge of the breach of trust during the currency of the life estate, he should have taken affirmative steps to set the matter right by action at once when he was advised of the improper investment of the fund. This view, however, was disapproved by Lord Justice Turner in Life Association of Scotland v. Siddal, 3 De Gex, Fisher & Jones, 271, where the writer said:

"The respondents relied much upon some observations which fell from the Master of the Rolls in the case of Brown v. Cross, seeming to import that, if a cestui que trust knows of a breach of trust, he is bound, although his interest may be reversionary, to take proceedings to have the matter set right, and will be held barred by acquiescence if he does not promptly do so, but this broad proposition was not necessary to the decision of that case, and with all deference to the Master of the Rolls, if he intended to lay down this proposition thus broadly, which I doubt, I am not, as at present advised, prepared to assent to it. It is the duty of the trustee to observe the trust and to preserve the property for the benefit of those entitled in remainder, and I am not prepared to hold that he can be permitted to escape from the liability incident to his duty by simply informing the cestui que trust that he has committed or intends to commit a breach of it. He cannot, as I apprehend, where the trust is clear, throw upon the cestui que trust the obligation of telling him what his duty is, and of cautioning him to observe it, thus involving the cestui que trust in

the burthen and expense of those duties which he has undertaken himself to perform."

The Lord Chancellor entirely concurred in the view of the Lord Justice.

In the American & English Encyclopaedia of Law, 2nd Edition, volume 28, pp. 1124-25, the general subject of a concurrence or acquiescence by the cestui que trust in the actions of the trustee, with a consequent estoppel because of such concurrence to complain of the actions of the trustee in making an improper investment, is up for discussion. The writer adds to the general discussion the statement that "a remainderman cannot acquiesce in the actions of the trustee until his interest falls into possession."

In White v. Sherman, 168 Ill., 589, this subject was up for discussion. The court said:

"The trustee cannot escape the liability merely by informing the cestui que trust, that he has committed a breach of trust. The trustee is bound to know what his own duty is, and cannot throw upon the cestui que trust the obligation of telling him what such duty is. Mere knowledge and non-interference by the cestui que trust before his interest has come into possession do not always bind him as acquiescing in the breach of trust. As a general rule, acquiescence by a tenant for life, or by a cestui que trust for life, will not bind the person entitled to the remainder."

In the case of Penn, Trustee, et al. v. Fogler, et al., 182 Ill., 76, it was urged that the beneficiaries in remainder of a trust by reason of their alleged laches and acquiescence in an improper investment of the trust property, were estopped to sue. The court, answering this contention, said: "Their interests were not accrued under the will until the death of the last survivor of the life annuitants. They are, therefore, mere remaindermen, and, under the law, a remainderman cannot acquiesce until his interest falls into possession."

We find no authority opposing the position set out by the English and Illinois courts and the text-writers above discussed, save the case of Browne v. Cross, which, as was remarked, has been disapproved. We would feel impelled to be controlled by the authorities cited, even if it did not meet our full approval. As above pointed out, the general doctrine that a remainderman need not sue, either to preserve or possess his rights, until the termi-

nation of the life estate, has been written out again and again in Kentucky. The cognate fact of a holding by a remainderman after an estate for life in trust entitles him to the protection of the same rules, if not to a more benevolent protection at the hands of a court of equity than our own courts have afforded to remaindermen generally. Mrs. Walker was not under obligation to sue until after her mother's death. She sued within five months thereafter. Having determined that the right to her to sue and the obligation upon her to sue were not contemporaneous until the death of her mother, we find it unnecessary to discuss at any length the general proposition of how and when and under what circumstances a cestui que trust generally will be barred by his acquiescence in the actions of the trustee. It is unnecessary to determine what degree of knowledge he must have or what amount of disclosure the trustee must have made to him. These questions are not before us. We have no hesitation, however, in remarking that conditions of fact may appear in the conduct of the cestui que trust which would of necessity estop him from repudiating the action of the trustee; but we find no such facts in the record here. The most that Mrs. Walker did was to read the document and to hand it back to her husband without comment. It is doubtful if the document itself is susceptible, when the surrounding facts are known, of a construction which the appellee would place upon it—that of being the personal or individual promise of J. A. McGoodwin to pay. It is true the document is an undertaking by J. A. McGoodwin to pay, but he recites that that which he promises to pay is one-sixth of the annuity fund provided in his father's will; and he makes his undertaking the more explicit by reciting that the obligation should not become due nor bear interest until the death of his mother, "at which time the fund is to be distributed equally to the six heirs of J. L. McGoodwin." The bonds themselves, the only written evidence of the existence of the fund, the only property or evidence of property which the hand could touch or the eye could see, had been sold; and J. A. McGoodwin, realizing the uncertainty of oral evidence, might well have thought that there should be in existence some written memorial of the continued existence of this trust fund. The language used by him was proper to subserve this view and purpose. He did not have to keep the

specific bonds in which he made the original investment. The testator's direction was that the investment should be made in good, safe bonds. Under section 4707 of the Kentucky Statutes, a person holding stocks, bonds or other securities in a fiduciary capacity for loan or investment has the power to sell and transfer them whenever he is of opinion that such a sale would benefit the trust estate. It is true, of course, that upon such a sale by J. A. McGoodwin, he should have reinvested the funds in other bonds, effectuating his father's purpose. In the case at bar he testifies that the Logan County bonds were about maturing at the time he sold them. His failure to reinvest the proceeds of the bonds sold in other bonds, and his written memorial delivered to Mrs. Walker without comment by her, do not alter the character of the fund itself, a fund created upon the certain trust named in the elder McGoodwin's will. This trust is clearly embraced within the general character of trusts given precedence against the estate of those in voluntary assignment, by the express provision of section 74 of the Kentucky Statutes, a right of which Mrs. Walker was not deprived by her failure to act until the termination of the preceding life estate, nor by the mere act of silence upon inspecting the document capable of the construction which we have put upon it.

We come now to the other defensive positions taken by the appellee. The first is his contention that J. A. McGoodwin had paid to Mrs. Walker the entire portion of her father's estate, including her interest in this trust fund. To sustain it there is put in evidence the personal representative's appraisal made in the county court at the time of J. A. McGoodwin's qualification as his father's executor; and then there are put in evidence the receipts executed by the various devisees of the elder McGoodwin, showing the payments made to them by J. A. McGoodwin. These receipts, it is true, show that each of the heirs had received more than one-sixth of the total appraised value of the estate. There was, however, a ten-thousand-dollar life insurance policy upon the life of the elder McGoodwin, which was collected by J. A. McGoodwin and paid out to the widow and six children. The record does not disclose whether this sum was embraced in the receipts executed by the six children. It does not show that the appraised value of the estate of the elder McGoodwin was its actual value; and indeed,

J. A. McGoodwin testifies that it realized a much larger sum than its appraised value. The assignee here could have given us definite proof upon the subject, had he put in evidence a copy of the settlement made by J. A. McGoodwin of his father's estate. This settlement should have shown the entire sum realized and distributed by him. We cannot accept the unsatisfactory ascertainment of the value of his estate, based upon the appraisal alone. J. A. McGoodwin testifies directly that this trust fund had never been paid out to the heirs. We cannot agree with the assignee, that he has proven a payment.

It is next urged by the assignee that Mrs. Walker was married at the time of the probate of her father's will and long before the enactment of the Weissenger Act of 1894, and that, therefore, she could not maintain her action, unless her husband should join her. It is true that, as held in Rose v. Rose, 104 Ky., 51, the property rights of a husband and wife in property acquired before the Weissenger Act became a law, are fixed by the pre-existing law; but in the case of Fowler v. Fowler, 138 Ky., 326, this court held that personal estate owned by the wife prior to the Weissenger Act, which had not been reduced to possession by the husband, might be held by the wife free from any control by her husband. Obviously, therefore, she could sue for it under the Weissenger Act, without her husband's joining with her. In the case of Terrell v. Maupin, 26 K. L. R., 1203, we held that the enactment of the Weissenger Act did not so far remove the disability of coverture as to set in operation the statute of limitation against a married woman who was under the disability of coverture when the act was passed. That decision turned upon the statute of limitation, however, and not upon the Weissenger Act which gave a married woman a specific right to sue in her own name. The court was careful to say that a married woman's ability to maintain a suit under the act of 1894 was no test of whether the period of limitation was set running by that statute. As her husband did not reduce this property to possession, her right to litigate about it was a right complete in her after the Weissenger act became a law.

There is some suggestion of the plea of limitation in the answer. It needs no further discussion than to remark that Mrs. Walker's right to sue did not accrue un-

til the death of her mother, some five months before she brought her suit.

It is also objected that as Mrs. Walker failed to present her claim within three months after the assignment, her right is barred. The assignee relies upon section 90 of the statute. He does not read the statute as it is written. It does not demand that the claim be presented within three months after the assignment. The statute provides that the creditor shall present his claim at the time or within three months after the time designated by the assignee as the time when he will sit to receive the claim. This time and the place the assignee must designate by advertisement. The assignee here testifies that he never designated any such time or place; and, of course, did not advertise them.

Upon the foregoing considerations the case must be and is reversed for proceedings consistent herewith.