## Vickers v. Vickers, Trustee, etc., et al.

(Decided October 19, 1920.)

### Appeal from Scott Circuit Court.

1. Infants—Estate of Held in Trust—Sale of.—The real estate of infants, held in trust, if sold under judgment of a court of equity, must be sold in the manner prescribed by the Civil Code, in the absence of a power given in the instrument creating the trust authorizing the trustees to sell and convey, or except when held as provided by act of April 24, 1882.
2. Infants—Sale of Infants' Real Estate.—The courts are without authority to approve a sale of an infant's real estate, when made by an unauthorized person or in an unauthorized way.
3. Infants—Sale of Infants' Real Estate.—If the trustee is authorized by the instrument which created the trust to make sale of it, he may do so, and the courts will not interfere with his exercise of the power, if he acts in good faith and with ordinary prudence.
4. Trusts—Sale of Trust Property.—If, the instrument creating the trust does not empower the trustee to sell the trust property, he can not do so, but, the chancellor upon application may authorize him to do so, when on account of change of conditions or circumstances, the capital of the trust fund is endangered, or its security weakened, and it has become to the best interests of the beneficiaries of the trust to have it sold, except where its sale is regulated by statute.
5. Trusts—Sale of Trust Property.—The power given to a trustee to sell the trust property may be express, or it may be implied from the conditions of the trust or the necessity of a sale to effectuate the trust, or when it is evident that the settlor intended that the trustee should be clothed with the power to sell.
6. Trusts—Direction to Invest in Lands.—A direction in a trust instrument to the trustee to invest the fund in lands, means a purchase of lands for cash, not upon credit, unless the instrument gives the trustee power to do so.

JAMES BRADLEY for appellant.

BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

J. S. Vickers, deceased, left a last will and testament, the parts of which necessary to be considered are as follows:

"First. I hereby appoint my two sons, James B. Vickers and Elmer C. Vickers, executors of this my last will, and direct that all of my debts and funeral expenses be first paid.

"Second. I will and direct that my wife, Nettie Vickers, shall have, as the law directs and to be set apart to her by the appraisers of my estate, the amount of seven hundred and fifty dollars, either in cash or personal property, as she may elect, or in money and personal property together to said amount.

"Third. I will and devise all the balance of my estate to my wife and children equally, share and share alike, and direct that after my present crops, now growing and nearly matured, shall be ready for market and as they shall become ready for market, they shall be sold and my whole estate be reduced to cash, except that it is my desire that my executors shall in the execution of the office of trustees, as hereafter explained, retain the team of old mules and the youngest jersey cow.

"Fourth. I direct that after my estate shall have been reduced to cash, my said two sons, James B. Vickers and Elmer C. Vickers, shall invest the whole cash balance of said estate in land to be held by them, in trust as trustees, for my said wife and children, who shall have equal shares in said land, and my trustees shall hold cultivate and use said land for the joint and equal benefit of my said wife and children until such time as my youngest child shall have attained the age of sixteen years, when said land shall be sold in such a manner as my trustees may elect, and the proceeds be equally divided between my said wife and children."

Elmer C. Vickers died, but James B. Vickers duly qualified as a trustee under the will and is now acting as such. The will was probated on September 7, 1918, and in pursuance of its directions, the executors reduced the estate in their hands to money, and on the first day of March, 1919, the present trustee having then in his hands seven thousand and five hundred dollars, arising from a sale of the property of decedent, and which as a trustee he was directed to invest in land for the benefit of the widow and children of decedent, he, as trustee purchased from one French, a farm containing one hundred and seventy-one acres, which French conveyed to him as trustee by a deed of that date. As a consideration for the sale and conveyance, the trustee paid to French the seven thousand and five hundred dollars, which he held as trustee, and which was practically the entire amount of the trust fund, and in addition thereto promised the further sum of eighteen thousand, two hundred and forty dollars, one-half of which he agreed to pay at the end of one year

and the remainder at the expiration of two years, and as evidence of which he as trustee executed his promissory notes, bearing interest from the date of their execution until paid.

The vendor retained a lien upon all the land to secure the payment of the deferred payments and in the deed executed by him the amount of the consideration unpaid was stated. When the note for the first one-half of the deferred consideration became due, the trustee was unable to pay any part of it, and realized that he was unable from the profits of the farm to provide a support for the *cestui que trustents,* pay the taxes, and ever discharge the notes or any part of them, the cash payment having consumed the entire trust fund in his hands. To escape the predicament in which he found himself, and as he thought to prevent the loss of the trust fund which he had invested in the land, the trustee, entered into an executory contract with Jennings & Gragg, by which he contracted to sell the farm to them which he had purchased from French, at a price which was in excess of that which he had agreed to pay for it, of two thousand five hundred dollars. Gragg & Jennings made a cash payment of fifteen hundred dollars, but refused to pay the remainder of the consideration, or to accept the deed of the trustee as a conveyance of the title, upon the ground that the trustee was not authorized to sell the land, nor to convey it in the absence of an order from the chancellor so to do. The trustee, however, made an executory contract for the purchase of a farm of thirty-eight acres from one Bailey, and paid to him the fifteen hundred dollars which Jennings & Gragg had paid to him, as a part of the consideration. He agreed to pay to Bailey the sum of fifteen thousand and five hundred dollars for the land purchased from the latter. The trustee, joining with the other *cestui que trustents,* except the appellant, Nettie Vickers, the infants among them suing by their statutory guardian, brought this action making Nettie Vickers a defendant, and praying the chancellor to clothe him with authority to execute a deed to Jennings & Gragg, to approve of the sale by him of the French farm and the reinvestment of the trust fund with its increase, if any, in the farm agreed to be purchased from Bailey. The court, upon a hearing of the evidence, adjudged, in accordance with the prayer of the petition, that the sale by the trustee of the French farm be confirmed, and the trustee directed to execute a deed to Jennings & Gragg, in accord-

ance with the terms of the contract of sale to them, and further directed the trustee to invest the proceeds of the sale of the French farm in the purchase of the Bailey farm. From the judgment the widow, Nettie Vickers, has appealed.

Without undertaking to recite the testimony, suffice it to say, that the evidence shows that the sale of the French farm was such as the dictates of ordinary prudence and common sense would demand, and that it would be very much to the benefit of the beneficiaries of the trust with the proper investment of the trust fund in other real estate. The judgment will necessarily have to be reviewed in its relation to the confirmation of the sale of the French farm, separately, from the direction as to the reinvestment of the trust fund in the purchase of the Bailey farm. It will be observed that the children of the testator for whom, together with the widow, the trust was created, are, six of them, infants, and they are joint owners of the beneficiary interests in the land with their mother, and the two adult children, and if the will of the testator, which created the trust, does not expressly or by implication, vest authority in the trustee to sell and convey the title to the land, the interests of the infants could not be sold except under a judgment of the circuit court in an action instituted by the persons authorized to do so, and against the parties required by the provisions of the Civil Code, and the sale would necessarily have to be made in the manner, at the time and place, upon the terms and by the officer prescribed by the provisions of the Civil Code, in order to make a valid sale and to divest the infants of their interests. Clark v. Stanhope, 109 Ky. 521; Walker v. Smyser, 80 Ky. 627; Hening v. Harrison, 76 Ky. 723; Murray v. Rodman, 25 Ky. L. R. 978; Howard v. Sebastain, 143 Ky. 327; Hicks v. Jackson, 24 R. 218; Malone v. Conn, 95 Ky. 93; Isaert v. Davis, 17 R. 686; Dineen v. Hall, 112 Ky. 273; Craig v. Wilcox, 94 Ky. 484.

Neither has the chancellor power to approve or confirm a sale of an infant's real estate, made by an unauthorized person, or when the court has not acquired jurisdiction to order a sale as provided by the provisions of the Civil Code, it cannot thereafter make a void sale of an infant's real estate valid by its approval. Kinslow v. Groves, 98 Ky. 266; Hulsewede v. Churchman, 111 Ky. 51; Bullock v. Gudgell, 117 Ky. 288; Ford v. May, 157 Ky. 830; Bills v. Burgess, 15 K. L. R. 41. The above stated

doctrine, however, should not be confused with the power of the chancellor to authorize upon application a trustee to make a sale of trust property where the property is held in trust for the life of one person, with a remainder over to a class of persons, or to any person not ascertained, or not to be ascertained until the death of the person upon whose life such estate is made to depend as provided by act of April 24, 1882. Craig v. Wilcox, *supra;* Marshall v. Anderson's Trustees, 157 Ky. 117. Nor should it be confused with the authority of the chancellor to approve and enforce a sale of lands held in trust for infants, where the instrument creating the trust vests the trustee with authority to sell and convey.

Hence, to determine whether the judgment ought to be upheld so far as it relates to the validity of the sale, by the trustee to Jennings & Gragg, of the French farm, the question to be considered is whether the trustee is clothed with authority, by the will, to make a valid and enforcible contract for the sale of the land, for if he is clothed with such authority the sale is valid, though made without the previous sanction and permission of the chancellor. First National Bank v. Reed, etc., 23 K. L. R. 1897; Citizens National Bank v. Jefferson, 88 Ky. 651. If the trustee is authorized to sell the trust property by the instrument which created it, he is privileged to do so, and a court of equity will not interfere with his exercise of such authority, provided he acts in good faith and with ordinary prudence, and an authorized sale made in the manner above described, the chancellor is authorized to approve and enforce when application is made to him. When the authority to sell the trust property is not conferred by the instrument which created it, in the absence of statutes providing to the contrary, the chancellor may authorize him to do so upon proper application wherever on account of a change of conditions and circumstances, the capital of the trust fund is endangered or its security weakened, and it has become to the best interests of the beneficiaries of the trust and necessary to the preservation of the fund and the carrying out of the intentions of the creator, that the trust property be sold and the proceeds otherwise invested. Hence, if the trust instrument does not give the trustee power to sell the property, in which the fund is invested, he cannot, when it is once invested, or when it is already invested at the time the instrument creating the trust is executed, sell the property and reinvest the proceeds in other property,

unless he acts in emergency for the safety of the trust fund and if he makes a change in the investment under the latter condition, without application to and the sanction of a court of equity, he will undergo the hazard of being responsible for a loss, if any occurs. 39 Cyc. 346, 410, 411; 26 R. C. L. 1289; Gamble v. Gibson, 59 Mo. 595. The power granted to a trustee to sell the trust property need not be express, but it may be implied from the conditions of the trust, and frequently from the necessity of selling the property to effectuate the trust, and often it is implied when from the things authorized to be done and from the language used, it is evident that the creator of the trust intended that the trustee should be clothed ·with the power to sell. Usually where the power to sell the property once for reinvestment is given, or where the trustee is directed to sell certain property and to create a trust fund, and to invest it in other property for the purpose of securing an income for the beneficiary or beneficiaries, or to provide a maintenance and support for the beneficiaries, it is considered that the power is not exhausted by one sale and one investment, but may be exercised again by the trustee when the proper management of the trust fund makes a second sale and investment desirable and necessary, provided the trust instrument, as a whole, does not negative the power of a change in the investment. When a power of sale is given once, and a direction to reinvest the proceeds, circumstances and expressions in the instrument are seized upon to give to the trustee the power to make a second sale and reinvestment of the funds, where such power is not expressly given, if it appears evident that such was the intention of the settlor of the trust. The following decisions of this and other courts are illustrations of the views above expressed: Bronston v. Davidson, Trustee, etc., 4 K. L. R. 56; Luxon v. Wilgus, 7 Bush 205; Cox v. Fant, 19 K. L. R. 1650; Whittingham v. Schofield's Trustee, 23 K. L. R. 2444; Hayes v. Applegate, 101 Ky. 22; Tait v. Lathbury, 35 Beavan 112; Owsley v. Eads, Trustee, 22 K. L. R. 355; Dearing v. Selvey, 50 W. Va. 4; Hamilton v. Buckmaster, L. R. 3 Eq. 323.

In the instant case the will which created the trust, directed the executors, who were, also, made the trustees, to sell all the estate of the testator, not otherwise devised, and convert it into money. It does not appear from the record whether his estate consisted of personal property, alone, or whether there was also, real estate. It further

directed that the trustees invest the money in land and hold it as trustees, and to cultivate and use the land for the benefit of testator's wife and children, until the youngest child should arrive at the age of sixteen years, when the trustee shall sell the land and divide the proceeds between the wife and children. It is evident that the chief and controlling purpose of the settlor was to provide a means of maintenance for his wife and children until the youngest child should arrive at an age when it might seek a livelihood for itself, and the language of the will was thus just as expressive of the purpose, that the income of the land should be used in the support of his wife and children as if he had directed that the income from securities be paid over to them. No particular piece of land was designated as the one to be purchased or held. The trustees were left at liberty to select the land in accordance with their sound discretion, and when the youngest child should become sixteen years of age, the manner of the sale of the land was left to the discretion of the trustee. It is not provided that the same parcel of land should be held during the entire time of the continuation of the trust, and nothing in the instrument is indicative that the trustee should not have power to sell a tract of land first secured and invest the proceeds in another if the circumstances become such that the safety of the funds and the proper administration of the trust make a sale and reinvestment desirable. The settlor, by silence, left that, also to the sound discretion of the trustees. The trust fund was invested in a tract of land, which it was the duty of the trustee to do. Transylvania University v. Clay, 2 B. M. 385. The trust instrument does not expressly empower the trustee to sell this piece of land and invest the proceeds in another, and the question here is, does it by implication give him the power to do so? In Owsley v. Eads, *supra,* the settlor of the trust devised to a trustee certain houses to be held in trust for the use and benefit of her daughter and son, during their lives, and to descend to their children at their deaths with expressed authority in the trustees when the interests of the *cestui que trustents* required it, and with their consent, to sell the houses and to invest the proceeds in the purchase of other houses to be held upon the same trust. No authority was expressly given for any further sales or investments, but it was held that the power to sell and reinvest was not exhausted by the first sale and reinvestment but it might again be exercised upon the houses in which the reinvestment was made.

In Luxon v. Wilgus, *supra*, the terms of the trust were to "manage, invest and pay over" to the *cestui que trustents* "from time to time" as the trustee might "from time to time" deem for their best interests. The trustee purchased a tract of land for the beneficiaries and took a deed to it to himself as trustee. He paid a part of the consideration in cash and executed his notes as trustee for the remainder. When the notes became due he could not pay them. He sold the land for the price he was to pay for it and executed a deed to the vendee, and it was held that the act was authorized, although there was no specific power given him to sell the property in which an investment had been made, and to invest the proceeds again. In Citizens National Bank v. Jefferson, *supra*, the trustees were directed to hold the personal estate in trust and pay the income to the *cestui que trustents*. No express power to sell was given nor any express power to reinvest the trust funds in other property, but it was held that it could be implied from what had to be necessarily done to effectuate the trust, that the trustees had a power of sale of the trust property, and to reinvest as the purposes of the trust made necessary. The same view was taken by the court in Tait v. Lathbury, *supra*. The power of a trustee is ordinarily commensurate with the duties of the trust. Hence, we conclude that the trustee in the instant case having express authority in the first instance to sell the property set apart for the trust, with direction to invest it in land and to finally sell the land at the termination of the trust period, and nothing negativing his right to sell property in which the fund had once been invested, and reinvest the funds when the purposes of the trust made it necessary, he had implied authority to sell and convey the French farm to the purchasers. The legal title is in him and there is no equitable reason why he should not sell and convey it and reinvest the funds in other similar property, by means of which he could effectuate the purposes of the trust. The investment by the trustee, as made by him, in the French farm could not have been approved, if the advice of the chancellor had been sought beforehand, but the trustee is not now seeking to invest the funds in it but to be permitted to withdraw the funds from it. The investment made by the trustee was done in a way which he had no power or authority to do. He was authorized by the trust instrument to make an investment in land, but that does not mean to buy land upon a credit, but it

means an actual purchase of land, and he was given no authority to incumber the trust funds with a lien which might ultimately completely destroy the fund. Bowman v. Pinkham, 71 M. 295; Barry v. Lambert, 98 N. Y. 300. The vendor had full notice from the deed executed by him and the signatures to the notes for the deferred payments, that he was dealing with the trustee as such, and that as such, the trustee was not authorized to buy the land upon credit and put the amount of the trust fund in lien for twice its value, or any other sum. While the corpus of the trust fund is doubtless not endangered, it is invested in a way so as to render it of no benefit for the time to the beneficiaries of the trust, and entirely defeats the purposes of the settlor. The sale of the French farm by the trustee was justified by the demands of ordinary prudence, the safety of the trust fund and the use to which it was dedicated and the chancellor was right in approving it. While the investment, as it was made, was a very unwise one, the trustee now recognizes it and asks the court to help him preserve the estate. The manner of its investment was doubtless attributable to the youth and inexperience of the trustee, but he is not the only person whose imagination has made him believe that at the foot of the rainbow there is a sack of gold, and whose expectations have been rudely disappointed. The matter of controlling importance is the preservation of the fund and its application to the purposes to which it was designed.

For the same reasons heretofore indicated the proposed investment of the trust fund, and its probable increase, in the Bailey farm, when it shall have been withdrawn from the French farm, should not have been sanctioned. The trustee seems to be simply proposing to remove the fund from the "frying pan into the fire." He should be permitted to buy such a quantity of real estate or such a part of the Bailey farm, and have it conveyed to him as trustee, as the trust fund will pay for, but no more, but he should not be permitted to incumber the land which he buys with the trust fund with liens to secure the payments for other lands, which he purchases without having any trust funds with which to pay for them.

For the reasons indicated the judgment of the court approving the sale of the French farm is affirmed, but that portion of the judgment which approves and directs the investment of the trust fund in the Bailey farm in

such a way as to fix a lien upon the land paid for by the trust fund to secure payment for other lands is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.