## Bowling, et al. v. Bank of New Haven, et al.

(Decided February 18, 1927.)

(Rehearing Denied with Modification, June 10, 1927.)

## Appeal from Nelson Circuit Court.

1. Executors and Administrators.—Under will devising real estate to widow during her life or for such period as she remained unmarried, with remainder to children in fee simple, executor was without power, without consent of remaindermen, to burden estate by mortgage, although will provided that sale might be made of real estate with widow's consent, but only for purpose of reinvestment in other real estate.

2. Trusts.—Cestui que trust may bind himself by consenting to investment of trust funds that would otherwise not be valid.

3. Executors and Administrators.—Remaindermen, under will devising property to wife for life or until her marriage, with remainder in children who were infants at time of sale of property, and reinvestment in accordance with will with purchase-money mortgage thereon, could not give their consent to investment of trust fund as made, nor did acquiescence after arrival at majority amount to ratification so as to estop them from questioning validity of lien on such property.

4. Pleading.—Where court at end of term gave plaintiffs 15 days in which to file additional pleadings and defendants 15 days for same purpose, refusal to permit defendants to file rejoinder to amended reply of which they had been given no notice held erroneous, under Civil Code of Practice, sections 107, 108.

5. Trusts.—Where trustee, under terms of instrument creating trust, had right to reinvest funds in land, trustee could have bought such part of real estate as trust fund would have paid for, and purchase-money lien against part not paid for with trust funds would be valid, since such lien would not affect or endanger trust fund.

6. Trusts.—Generally, where trust funds had been misappropriated by the trustee and invested in property not permitted by instrument creating the trust, or had been mingled with funds of trustee in purchase of property, and trust fund it traceable, cestui que trust may take such proportion of whole property which trust money contributed to purchase as trust money bore to whole money invested to take lien on property for amount of trust fund.

OSSO W. STANLEY for appellants.

KELLEY, KELLEY & BROWN, WILLIAMS & HANDLEY and LEE HAMILTON for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing in part and affirming in part.

G. K. Bowling died testate in 1904, a resident of Nelson county, Ky. He left surviving him his widow, the appellant, Imelda Bowling, and seven children, all of whom were infants His will, omitting the introductory clause, reads as follows:

"First—I appoint my friend and partner, Miles A. Howard, my executor and desire that he be allowed to qualify without any surety or security.

"Second—I desire my said executor to pay all my just debts and funeral expenses, and all the residue of my estate, real, personal and mixed, of every character and description and wherever situated, I give, bequeath and devise to my wife, for and during her life and widowhood, to be held and enjoyed by her so long as she lives and remains unmarried with remainder, after her death or marriage, to my children in fee simple, and if my beloved wife should marry again she shall then take and have only such interest and estate in my real and personal estate as she would be entitled to as my widow, if there had been no will, but my said executor is now given full power and authority to sell all or any part of my real estate or any real estate in which I have any interest or title or estate, and to sell any of my personal property, and after the payment of all my debts the proceeds of the sale of all or any part of my real estate shall be invested by my executor in other real estate, but in making such an investment in other real estate I wish my wife to be consulted and to give her consent in writing to the purchaser of the real estate bought with such proceeds.

"After enough of my property has been sold to pay all my debts and funeral expenses and the costs of administration, the remainder of my real estate shall not be sold and conveyed without the written consent of my wife, and then *only for reinvestment in other real estate,* but the purchaser of my real estate shall not be required to see to such investment of the purchase money.

"When my executor sells any of said real estate he may make deeds and conveyance therefor."

Some of the testator's real estate was sold to pay debts, but after these were paid there was left the home place on which the widow and children continued to reside until 1919.

The appellant Imelda Bowling and the oldest son, Charles Bowling, entered into negotiations with J. H. Mahoney and H. F. Mathis for the purchase of a farm located near the one on which they then resided. J. H. Mahoney had sold the farm which Imelda Bowling and Charles Bowling desired to purchase to H. F. Mathis for the consideration of $26,500. It appears that Mathis had paid $5,300 of the purchase price and was in possession of the farm, but no deed had been executed to him. The farm on which the Bowlings resided was sold to Chester Howard for $14,200. Miles Howard, the executor under the will of G. K. Bowling, executed a deed to this land and the widow joined therein, as required by the will. At the same time the larger farm was purchased of Mahoney and Mathis for the consideration of $26,500. The proceeds of the home place ($14,200) were paid—$5,300 to Mathis and $8,900 to Mahoney—and for the balance ($12,300) Imelda Bowling executed five notes payable to Mahoney, due annually commencing December 31, 1920, to secure which a lien was retained in the deed.

The deed from Mathis and Mahoney recited that the land was conveyed to—

"Mrs. Imelda Bowling, for and during her life and widowhood, to be held by her and enjoyed by her so long as she lives and remains unmarried, with remainder after her death or marriage to the second parties, Bernardette Bowling, Edith Bowling, Charlie Bowling, Fred Bowling, Anthony Bowling, Walter Bowling, and Georgia Bowling, children of G. K. Bowling, deceased, with full power in second party, Miles Howard, executor of G. K. Bowling, to sell and convey the property herein conveyed at any time for reinvestment in other real estate, provided the written consent of Mrs. Imelda Bowling is obtained to make said sale and conveyance."

The deed further recited:

"It is understood and agreed that the land herein conveyed is to be held under the same terms by which the real property of G. K. Bowling was

devised to the second parties herein, by and under his will which is recorded in Will Book No. 20, page 102, in the office of the clerk of the Nelson county court.''

The five notes of Mrs. Bowling were discounted by Mahoney to the Bank of New Haven, which disposed of four of them to others. Mrs. Bowling paid the interest on these notes until 1923, and, upon refusal to make further payments, this suit was instituted on January 1, 1926, seeking a personal judgment against Imelda Bowling and the enforcement of the lien on the property. Miles A. Howard, the executor under the will of G. K. Bowling, had died in 1922, but Imelda Bowling and her seven children were made parties defendant. The defendants answered alleging that there was no power in the trustee or the life tenant to incumber the trust estate by a pur-chase-money lien and that the alleged lien was void and the notes were obligations of Mrs. Bowling individually; that the holders of the notes took them with actual and constructive knowledge of the limitations contained in G. K. Bowling's will and that four of the children were infants at the time of the transaction. The plaintiffs filed a reply, controverting the affirmative allegations of the answer. Depositions were taken and near the end of the second term of court after the filing of the petition, in order that the case might be submitted as of that term, an order was entered giving plaintiffs 15 days in which to offer further pleadings and submit proof and the defendants 15 days thereafter for the same purposes. After court had adjourned for the term and during vacation, but within the 15 days allowed, plaintiffs filed an amended petition, and the defendants filed a demurrer and an answer thereto. Thereafter, but still within the 15 days allowed, plaintiffs filed an amended reply, in which they pleaded estoppel as to Imelda Bowling, Charles Bowling, Edith Bowling, and Bernardette Bowling, alleging that the purchase of the land from Mahoney and Mathis had been made at their instance and request and that they were estopped by their acts in securing the purchase of the land and the investment of the trust funds therein from questioning the validity of the lien retained in the deed from Mahoney and others; and, further, alleging that the four children, who were infants at the time the purchase was made, had recognized the validity of the investment of the trust

funds in these lands by asserting title thereto and receiving the benefit from the investment since becoming 21 years of age, and that they were therefore estopped from denying the validity of the lien. The defendants were given no notice of the filing of the amended reply and had no knowledge of it until judgment had been entered. They then tendered a rejoinder, traversing the plea of estoppel, but the court refused to set aside the judgment and permit it to be filed.

The chancellor found that plaintiffs were entitled to a personal judgment against Imelda Bowling for the amount of the notes and that she took an absolute life estate, with remainder in fee to the children, in the portion of the land purchased with trust funds, and that, while the trustee had no power to incumber the trust estate by a purchase-money lien and the plaintiffs had notice of the limits of his authority, Imelda Bowling and the three children who were of age at the time the land was purchased and the investment made are estopped to deny or question the lien, and their shares in the trust estate were adjudged to be paid to the plaintiffs. He further found that a 142/265 interest in the land was trust estate, that being the portion paid for out of trust funds, and could be reclaimed free from any lien by such defendants as were not estopped. The land was ordered sold and 123/265 of the proceeds ordered paid to the plaintiffs, and also the value of the life estate of the widow in the remaining 142/265 of the proceeds and the interests therein of the three children who were 21 years of age at the time the transaction occurred; and it was further adjudged that the four remaindermen, who were infants at the time the transaction occurred, were each entitled to 1/7 of 142/265 of the proceeds, after deducting the present cash value of the life estate of their mother.

The defendants have appealed and the plaintiffs are prosecuting a cross-appeal from that part of the judgment which found the four defendants, who were infants at the time the transaction occurred, were not estopped. Under the will of G. K. Bowling, the trustee was without power, without the consent of the cestuis que trustent, to burden the trust estate by a mortgage or purchase-money lien. Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44. It appears, however, that Imelda Bowling and Charles Bowling not only consented to the investment of the trust estate in the manner in which it was invested, but the

sale of the G. K. Bowling farm and the purchase of the Mahoney and Mathis farm was made at their suggestion and by their procurement. A cestui que trust may bind himself by consenting to an investment of trust funds that would otherwise not be valid. The rule is thus stated in 39 Cyc. 383:

"Also a mortgage of trust property is valid, regardless of whether it is authorized or not, when it is clearly assented to or ratified by the cestui que trust, and the mortgage may be valid as to part of the interests purported to be incumbered and invalid as to the remainder."

See Schlickman v. Dusing, 188 Ky. 745, 224 S. W. 174; McAuslan v. Union Trust Co., 46 R. I. 176, 125 A. 296; Williamson v. Grider, 97 Ark. 588, 135 S. W. 361; Baker v. Thompson, 181 App. Div. 469, 168 N. Y. S. 871.

There was no limitation in the testator's will on the right of alienation by the life tenant or the remaindermen. Under the testator's will, the trustee had no voice in the management or control of the land, nor did he have any control of the income therefrom. The only duty to be performed by the trustee was, with the consent of the life tenant, to sell the land and invest the proceeds in other land. This was clearly intended to provide a means for conveying the land during the minority of any of the remaindermen, and does not limit the right of any of the beneficiaries who are sui juris to sell or incumber their interests.

Of course, the four children who were infants at the time the transaction occurred could not give their consent to the investment of the trust funds as made, nor does their acquiescence in the situation as they found it when they arrived at the age of 21 years amount to a ratification. They are required to take no steps to preserve their rights until the termination of the life estate, and they have done nothing to mislead appellees to their injury. Walker v. Milliken, 150 Ky. 12, 150 S. W. 71. The lower court correctly held that they were not estopped. There is no proof of any acts on the part of appellants Edith Bowling and Bernardette Bowling that would constitute estoppel as to them, but judgment was entered against them because the averments of the amended reply were not controverted.

Section 107 of the Civil Code of Practice is as follows:

"The court may, for good cause shown, and at the cost of the party applying therefor, extend the time for filing a pleading, but not beyond the next succeeding term."

And section 108 of the Civil Code of Practice provides:

"The filing of an answer or subsequent pleading in the clerk's office during vacation, within the time allowed, with notice thereof to the adverse party, or his attorney, shall be equivalent to a filing in court."

As stated above, at the end of the term of court the plaintiffs were given 15 days in which to file additional pleadings and the defendants were given 15 days thereafter for the same purpose. The plaintiffs did file an amended petition to which the defendants filed an answer, but thereafter within the time allowed they filed an amended reply in which for the first time the plea of estoppel was made. No notice thereof was given to the defendants or their attorney, and it having been overlooked by their attorney and no rejoinder thereto filed, the court treated the allegations of the amended reply as confessed. Although defendants knew that plaintiffs had 15 days during which they might file additional pleadings, they did not know any pleadings would be filed, and after an amended petition had been filed it was only natural for them to believe that plaintiffs intended to file no further pleadings. The sections of the Code above quoted are intended to meet situations such as this, and the court erred in refusing to permit the defendants to file a rejoinder to the amended reply when they had been given no notice that an amended reply had been filed. Felts v. Edwards, 181 Ky. 287, 204 S. W. 145; Kohlman v. Moore, 175 Ky. 710, 194 S. W. 933.

The court also erred in adjudging that Imelda Bowling owned an absolute life estate in the land in which the trust funds had been invested. Under the will of G. K. Bowling, she owned a life estate subject to being defeated by her marriage, in which event she would own a life estate in one-third of the land.

The appellants contend that the trustee, having wrongfully invested the trust fund of $14,200 and same

being identified in the land, the beneficiaries and substituted trustee have the right to reclaim the entire amount. We are unable to agree with appellants in this contention. The lien against the portion of the land purchased with trust funds, being 142/265 of the land, is invalid as to such beneficiaries as are not estopped, but is valid as to the remaining portion of the land which was not paid for with trust funds. While the land may have depreciated in value, the same thing would have occurred had only so much land been purchased as the trust funds would have paid for. As said by the chancellor in his opinion:

> "If the trust funds had been invested in land free from incumbrances, the general decline in the market would have affected its value in the same proportion the decline has affected the land involved, and the consequences would have been the same so far as the defendants are concerned."

The trustee, under the terms of the instrument creating the trust, had the right to invest the funds in land. The wrong consisted in incumbering the land so purchased with a lien and thus endangering the trust fund. The trustee could have bought such a quantity of real estate, or such a part of the Mahoney farm, as the trust fund would have paid for, and a purchase-money lien against that part of the Mahoney farm not paid for with trust funds would have been, and is, valid, as such a lien does not affect or endanger the trust fund. Vickers v. Vickers, supra.

The general rule is that, where trust funds have been misappropriated by the trustee and invested in property not permitted by the instrument creating the trust, or have been mingled with funds of the trustee in the purchase of property and the trust fund is traceable as having furnished in part the money with which the investment was made, and the proportion it formed of the whole money so invested is known or ascertainable, the cestui que trust is entitled to elect to take such a proportion of the whole property which the trust money contributed to purchase as the trust money bore to the whole money invested or to take a lien on the property for the amount of the trust fund. The reason for the rule is that the trustee cannot be allowed to make a profit from the use of trust money. This rule has no application

here, since the trustee was authorized to invest the funds in land, and no profit can inure to the trustee, nor to the holders of the lien notes.   There is no claim nor intimation that the land in question, consisting of 401.11 acres, cannot be divided, and by setting aside to the beneficiaries the proportion in value of the land purchased with trust funds their interests will be fully protected, and they will not be forced to sell their land.

On a return of the case the chancellor will appoint commissioners to set aside 123/265 thereof in value, to which the lien will apply; the remaining 142/265 of the land representing the proportion thereof purchased with trust funds.٭ The commissioners will also take into consideration and set aside the interests in the remaining land of such remaindermen, if any, as may be found to be estopped, and all of the land so set aside by them will be sold and the proceeds applied to the payment of the notes sued on.   The interest of Imelda Bowling in the remaining land, being a life estate, subject to being reduced by her marriage to a life estate in one-third thereof, will be sold, and the proceeds applied to the payment of such notes.

Judgment is reversed on the original appeal with directions to permit the defendants to file the rejoinder to the amended reply, and to permit both parties, as to all of the remaindermen who were 21 years of age when the land was purchased, to take further proof on the question of estoppel if they so desire, and for further proceedings consistent herewith.

On the cross-appeal the judgment is affirmed.