## Halcomb et al. v. Simpson.

Nov. 27, 1945.

W. N. Flippin for appellants.

B. J. Bethurum for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

Appellants brought this action to recover $756 which was the alleged value of timber cut and removed from two tracts of land patented by James Wright, deceased, and which descended to appellants as his heirs.

James Wright died intestate in Pulaski County, the owner of three tracks of lands in that county, one tract containing 150 acres, known as the Farmer tract, and the other two tracks containing 65 and 50 acres, respectively. The 150 acre tract was acquired by deed and the other two tracts were acquired by patents and will be referred to herein as the patented tracts.

James Wright left surviving him his widow, Sarah Wright, who died before this proceeding was instituted, and six children, David Wright, Thomas Wright, Mary Rachel Wright, Margaret Halcomb, Johnnie Wright, and Leona Farmer. Subsequent to the death of James Wright and his wife, Thomas Wright and David Wright and

their wives sold and conveyed their interest in the Farmer tract to S. G. Dills, thus giving to Dills a two-sixth interest in that property.

Dills brought an action, under Section 490 of the Civil Code of Practice, asking that the land be sold and the proceeds distributed to the parties according to their respective interests. Pursuant to proper proceedings the master commissioner offered the property for sale and one David Jones, being the highest and best bidder, was delivered a deed which described by metes and bounds the 150 acres known as the Farmer tract.

It appears from the evidence that at the time Jones purchased this land he was of the opinion that the commissoner was selling all of the land belonging to the Wright heirs. He testified that this opinion was based on representations of the commissioner that the entire estate of the Wright heirs was being sold and that, in all, 265 acres was being offered. The three tracts total 265 acres.

Thereafter Jones cut some timber from one or both of the patented tracts but later sold the property to the appellee Jewel Simpson. The deed from Jones to Simpson contained the same description which appeared in the commissioner's deed to Jones which was, as we have said, a description of only the Farmer tract. Apparently both Jones and Simpson thought that all of the Wright property, including the two patented tracts, was being sold, and Simpson placed a saw mill upon the patented tracts and cut and removed timber from them. No timber was cut or removed from the Farmer tract, and the evidence indicates that Simpson was only interested in the timber that was on the property.

It is admitted by all the parties that the deeds by which Jones acquired the property, and by which Simpson acquired it from Jones, described only the 150 acre tract to the exclusion of the two patented tracts, and so far as the record title is concerned Simpson only owns the Farmer tract.

When this suit was brought by the heirs of James Wright to recover the value of the timber which Simpson had removed from the two patented tracts, Simpson, by an amended answer, pleaded an estoppel against the heirs, alleging that S. G. Dills had on several

occasions told David Jones, the purchaser at the commissioner's sale, he owned the share of two of the Wright heirs and that his interest in the land amounted to 88 acres; that Dills urged Jones to bid on the land and pointed out to him a line painted by the United States Government which enclosed practically all of the boundary of the Wright property; that Dills knew the location of the Wright property and guaranteed to Jones that the entire Wright estate was being sold at the commissioner's sale, and that Jones relied upon this statement and a similar statement by Thomas Wright, one of the heirs, in purchasing the property. It was also alleged in the answer that the painted boundary line was shown to Jones by Johnnie Wright, another of the Wright heirs, and that Jones believed he was purchasing the entire 265 acres. It was further alleged that appellee was assured by Jones that he owned the entire 265 acres and in purchasing said land from Jones he believed he was acquiring all three tracts of the Wright property. Appellee also alleged he would not have purchased the land except for the assurance of Jones, Dills and the two Wright heirs that he was acquiring the entire 265 acres and that Dills and the two Wrights were taking a position inconsistent with that previously taken by them and were estopped to make a claim for the value of the timber which he had removed from the property.

At the trial of the case the evidence introduced supported these allegations and at the conclusion of the testimony the court instructed the jury as follows:

"No. I. The court instructs the jury that if you believe from the evidence in this case, that the defendant, Jewell Simpson, by himself or through his agents or servants cut or removed any timber from either the 50 or 65 acre patents issued to James Wright and introduced in evidence herein, and that this was against the will and without the consent of the plaintiffs in this action, you will find for the plaintiffs, the fair and reasonable market value of such timber at the time and place where it was cut and removed, not to exceed the sum of $756.00, the amount claimed in the petition.

"And unless you so believe you will find for the defendant, Jewell Simpson.

"No. II. Although the jury may believe from the

evidence that the defendant, Jewell Simpson, cut and removed timber from the 50 and 65 acre tracts of land referred to in the evidence, and which belonged to James Wright and descended from James Wright to the plaintiffs, yet, if the jury shall further believe from the evidence that previous to the sale of James Wright's lands by the Master Commissioner one or more of the children and heirs showed the purchaser, David Jones, a marked or painted line around said lands which included the three boundaries referred to in the evidence, or if the jury shall believe from the evidence that one or more of the children or heirs of the said James Wright represented to the purchaser, David Jones, that all of the lands of the said James Wright were being sold in the action brought by his heirs to sell said lands; and if you shall further believe from the evidence that the said David Jones relied upon said representations of the children or heirs at law of the said James Wright, if the jury shall believe from the evidence that such representations were made, and that the said purchaser, David Jones, would not have purchased said lands at Commissioner's sale but for said representations, then you are instructed that if you shall so believe from the evidence you will find for the defendants:''

No complaint is made of instruction number one, but it is vigorously contended that instruction number two is erroneous in that it makes all of the heirs responsible for the actions or representations of any one of them.

We think it is clear that if there was an estoppel arising in favor of Jones, the purchaser at the commissioner's sale, the benefits of such estoppel inured to the appellee Simpson who is Jones' vendee. In 19 Am. Jur., p. 815, Section 158, we find the following statement:

''A person entitled to the benefit of an estoppel may transfer it by transferring the estate to which it relates, but he can not enlarge it.''

Thus Simpson, insofar as the plea of estoppel is concerned, stands in the same position as Jones and can plead the estoppel in the same manner as Jones might have if he had been the party defendant.

The evidence as to the estoppel is ample for the purpose of submitting that issue to the jury, as to the

parties who actually made the statements or representations creating the estoppel, but we think the instruction of the court that the actions or representations of one or more of the heirs must be imputed to all of them, is erroneous. There is no basis in reason or in law for such an instruction. There is no evidence in the record which indicates that the heirs who made such representations were acting with the knowledge and consent of the others, nor is there any evidence of agency which might make such actions or representations binding on all the heirs, and the case must be reversed for this reason. See Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499, in which it was held that heirs having undivided remainder interests in land were not estopped by reason of acts of other heirs which constituted an estoppel against them.

On a retrial the court will give the estoppel instruction only as to those heirs who, the evidence shows, have made such representations or taken such actions as would create an estoppel, submitting to the jury, as to the others, the issue as to the value of the timber cut and removed from the patented tracts under instruction number one, as herein quoted.

Wherefore this cause is reversed for proceedings consistent with this opinion.